**In re GRABILL CORP., Camdon Companies, Inc., Foxxford Group, Ltd., the Techna Group, Ltd., Windsor–Hamilton, Ltd., Debtors.**

**Jay A. STEINBERG, Plan Trustee for Grabill Corp., and the Techna Group, Ltd., Plaintiffs,**

v.

**MELLON BANK, Defendant.**

No. 91 C 02662.

United States District Court, N.D. Illinois, E.D.

Aug. 27, 1991.

Glen H. Kanwit, Lela Darlene Johnson, Matthew J. Botica, Hopkins & Sutter, P.C., Chicago, Ill., for plaintiffs, debtors.

James A. White, Joseph L. McEntee, Jr., David S. Kurtz, Catherine D. McBride, Jones, Day, Reavis & Pogue, Chicago, Ill., for defendant Mellon Bank.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

The defendant in this adversary suit, Mellon Bank, moves for an order withdrawing reference of the suit from the United States Bankruptcy Court. Claiming entitlement to a jury trial of the claim against it, *see Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), Mellon Bank contests both the statutory and constitutional authority of the bankruptcy court to conduct such a proceeding, a matter left open for consideration by the Supreme Court in *Granfinanciera.*

The parties agree that the matter to be decided is a core proceeding arising under the preference and fraudulent transfer provisions of the bankruptcy code and therefore susceptible to trial by jury. The question as to whether bankruptcy courts are empowered to conduct jury trials in core matters that are legal in nature has yet to be addressed by the Seventh Circuit.[1] The issue has, however, engendered a split among other Circuits. The Second Circuit was the first to consider the question, and held that bankruptcy courts have implied statutory authority to conduct jury trials in core matters, so as to conform, post *Granfinanciera,* to Congress' desire that legal questions be heard by bankruptcy courts. *In re Ben Cooper, Inc.,* 896 F.2d 1394 (2d Cir.), *vacated,* —— U.S. ——, 111 S.Ct. 425, 112 L.Ed.2d 408 (1990), *opinion reinstated,* 924 F.2d 36 (2d Cir.). The Second Circuit additionally found no violation of Article III or the Seventh Amendment in such a practice. The Eighth and Tenth Circuits, however, have disagreed, finding neither explicit nor implicit statutory authority for bankruptcy courts to conduct jury trials in core proceedings. *In re United Missouri Bank of Kansas City,* 901 F.2d 1449 (8th Cir.1990); *In re Kaiser Steel Corp.,* 911

---

1. We note that the constitutionality of "core" jurisdiction in general is an issue that may be of some concern, but which has yet to be litigated in any court. *See* McCoid, *Right to Jury Trial in Bankruptcy:* Granfinanciera, S.A. v. Nordberg, 65 Am.Bankr.L.J. 15, 40 (Dedication Issue 1991); Gibson, *Jury Trials and Core Proceedings: The Bankruptcy Judge's Uncertain Authority,* 65 Am. Bankr.L.J. 143, 168–79 (Winter 1991). That situation shall remain unchanged in this case as the issue has not been raised before us as grounds for withdrawal of the reference.

F.2d 380 (10th Cir.1990). The two decisions that have been rendered to date by district courts in this district have both found implied statutory authority and no constitutional impediment to bankruptcy courts conducting jury trials in core proceedings absent the consent of both sides. *Citibank v. Park–Kenilworth*, 109 B.R. 321 (N.D.Ill. 1989) (Marovich, J.); *In re Stoecker*, 117 B.R. 342 (N.D.Ill.1990) (Leinenweber, J.).

The history and pertinent legal arguments underlying this issue have already been discussed and analyzed in the conflicting opinions of the courts of appeals, with added embellishments in decisions of the lower courts. Our opinion assumes familiarity with those decisions. *See also, Symposium on Jury Trials in Bankruptcy Court*, 65 Am.Bankr.L.J. 1 (Dedication Issue 1991); Gibson, *Jury Trials and Core Proceedings: The Bankruptcy Judge's Uncertain Authority*, 65 Am.Bankr.L.J. 143 (Winter 1991). Having canvassed these authorities, there would appear to be little room to add to the debate. Thus, for all practical purposes, our essential task would appear simply to be a matter of choosing sides. Given the variety of supporting rationales that have been bandied about in the debate thus far and the addition of a few of our own, however, we find it necessary to articulate the specific reasons upon which we ultimately conclude that implied statutory authorization for bankruptcy courts to conduct jury trials is lacking.

First, we substantially agree with the court's apt assessment in *In re Jackson*, 118 B.R. 243 (E.D.Pa.1990), which criticizes attempts by courts to discern implied Congressional authorization from an essentially nonexistent legislative history: "what we have here is a situation in which the search for Congressional direction, express or implied, is an illusory search.... [T]he question which is at the heart our inquiry—where jury trials could be conducted in bankruptcy matters—simply does not seem to have been addressed by Congress at all." 118 B.R. at 243; *see also, United Missouri Bank*, 901 F.2d at 1456 ("it appears Congress did not even consider the need to provide jury trial authority"). That

being the case, we are not persuaded by the further attempt to piece together supposed Congressional intent based on the content, structure and history of related provisions. *See, e.g., Stoecker*, 117 B.R. at 346–47; *Citibank*, 109 B.R. at 328. Since it is apparent that Congress did not consider the issue at all, we find it inappropriate to base a finding of implied authority upon what essentially may only be regarded as an accident of design (which itself has been proven by the caselaw to be entirely ambiguous with respect to the issue at hand).

Absent a reliable indication of Congress' actual intent either in the legislative history or the design of the statute, the next analytical step followed by the courts has been to discern whether the power to be implied is "practically indispensable and essential in order to execute the power actually conferred"—in this case, the power of bankruptcy courts under § 157(b) to conduct trials and issue final orders in core proceedings. *See United Missouri Bank*, 901 F.2d at 1456. We do not share the Second Circuit's view that the bankruptcy code must be construed to allow bankruptcy courts to conduct jury trials as the only way to reconcile Section 157(b)'s grant of authority with *Granfinanciera*'s teaching that proceedings that are legal in nature must be tried to a jury if demanded. *Ben Cooper*, 896 F.2d at 1402. As the court in *Jackson* observed: "There is, of course no question that the constitutional mandate can be vindicated by conducting jury trials in the district court." *Jackson*, 118 B.R. at 251. Indeed, what is purportedly a broad grant of authority under Section 157(b) has several expressly defined limits under the code. For example, Section 157(d) specifically permits a district court to withdraw any case for good cause shown and contains an additional mandatory withdrawal provision for certain matters that might otherwise be deemed to be core. If the broad power to hear and enter judgments in core proceedings is not disturbed by the discretionary or mandatory removal of certain core matters to the district court, then the removal of matters that require a jury trial likewise cannot be deemed to be so

consequential as to render the general grant of authority meaningless.

Each of these considerations—the paucity of legislative history demonstrating Congressional intent, the ambiguity of the legislative scheme, and the lack of a need to imply jury trial authority for bankruptcy courts in order to sustain the legislative scheme as it presently exists—factor against a finding that authority for jury trials in core proceedings is statutorily implicit. In ultimate support of our decision, however, we do not rely on the canon of statutory construction, relied upon by the Eighth Circuit, by which a court should "avoid an interpretation of a federal statute that engenders constitutional issues if a reasonable alternative poses no constitutional question." 901 F.2d at 1456 (quoting *Gomez v. United States*, 490 U.S. 858, 109 S.Ct. 2237, 2241, 104 L.Ed.2d 923 (1989)). We agree with the *Jackson* court that the constitutional concerns raised in opposition to bankruptcy court jury trials are of no consequence.[2] *See, e.g., Jackson,* 118 B.R. at 252–53.

For us the ultimate rationale behind our holding is more fundamental. The question at issue primarily concerns the scope of legislatively authorized judicial power where legislative intent cannot be discerned. It is simply not our function as a federal court to usurp Congress' role and fashion such jurisdiction ourselves. As the Tenth Circuit has pointed out

> Until *Granfinanciera* it was possible for Congress to presume that jury trial rights would not extend to core proceedings. As such, no authority to conduct such trial needed to be granted. Simply because *Granfinanciera* suggested the

desirability of granting such power to bankruptcy judges does not permit us to find that power where Congress has not granted it.

*Kaiser Steel,* 911 F.2d at 392.

For this reason in particular, we see no merit to the Trustee's argument that "the policy of efficient administration tips the balance decidedly in favor of jury trials in bankruptcy court." Response at 8. That argument follows from the *Jackson* court's rhetorical inquiry as to what made sense in terms of policy:

> Is it sensible to have the bulk of the aspects of the bankruptcy process committed to bankruptcy judges, but with transfer to a district court of those claims that require jury treatment? On the face of it, that does not sound like an efficient use of the time either of bankruptcy courts or district courts.

*Jackson,* 118 B.R. at 252. The court relied on these concerns to justify its ultimate decision essentially to personally authorize jury trials in bankruptcy notwithstanding a well reasoned conclusion that Congress has yet to do so. Though the concerns voiced by the court carry equal weight in this and any other district, we do not find them to be legitimate factors for consideration. We are not entrusted to bestow a grant of jurisdiction simply because we regard the measure as a "sound mode of judicial administration." *Id.* We can agree with the court that based on these concerns "it makes sense to conclude that, if Congress in 1984 had been faced with the issue brought to the fore five years later by *Granfinanciera,* Congress would have voted to affirm the authority of the bankruptcy courts to conduct jury trials."[3] But it

---

**2.** Alternatively, Professor Gibson has pointed out that

> there is little to be gained in the long run from allowing the interpretation of § 157(b)(1) to be influenced by the canon of construction relied upon by the Eighth Circuit. Although the conclusion that bankruptcy judges lack statutory authority to conduct jury trials avoids having to grapple with the constitutionality of such a practice, it does not eliminate the underlying constitutional question of whether bankruptcy judges can adjudicate core proceedings even without juries. It

is really the congressional authorization for bankruptcy judges to hear and determine and enter final judgment in core proceedings—not the method of factfinding—that raises constitutional concerns after *Granfinanciera.*

Gibson, *Jury Trials* at 161–163. That broader question, which necessarily encompasses the jury question, poses the more serious constitutional question.

**3.** We note, however, that the concerns of the court in *Jackson* may be overstated. Since the BAFJA was amended in 1984, the bankruptcy courts have conducted only two jury trials, both

remains that Congress has not voted to affirm such authority. *Id.* at 252. What Congress would have done does not resolve the fact that Congress has yet to do it.

Accordingly, we grant Mellon Bank's motion to withdraw the bankruptcy reference.[4] It is so ordered.

by consent. In the two years since *Granfinanciera* established the jury trial right and notwithstanding ever-increasing bankruptcy filings, we have yet to see in this district a rash, or even a discernible shift, toward jury demands in bankruptcy cases. To the extent the concept may begin to catch on (and then, we would imagine, primarily as a strategic consideration more than as any exercise of a fundamental right), the increase in jury demands would have to be quite substantial to create a level of inefficiency that would be of concern—a point that is exemplified by the routine and orderly transfer back and forth of matters between the district courts and magistrate judges. Of course, simply from a convenience perspective, we do not discount the substantial benefit of having a single tribunal handle as much of the bankruptcy proceeding as possible. That factor alone is significant enough to warrant the authorization discussed.

4. A status hearing is ordered before this court for September 6, 1991 at 10:30 a.m.