In the Matter of **GRABILL CORPORA-TION, Camdon Companies, Incorporated, Foxxford Group Limited, et al.,** **Debtors.**

**Appeal of NCNB NATIONAL BANK OF NORTH CAROLINA.**

No. 91–3381.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 9, 1991.

Decided July 13, 1992.

Glen H. Kanwit (argued) and Matthew J. Botica, Hopkins & Sutter, Chicago, Ill., for plaintiff-appellee.

Edward T. Joyce, Raymond A. Fylstra, Joyce & Kubasiak, Chicago, Ill., and Robert D. Dearborn (argued) and Hayden J. Silver, III, Moore & Van Allen, Charlotte, N.C., for defendant-appellant.

Before POSNER, COFFEY, and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

This appeal presents an issue the Supreme Court has twice saved for another day:[1] whether bankruptcy courts possess the statutory (and if so, the constitutional) authority to conduct jury trials in core proceedings.

The defendant in this action, NCNB National Bank of North Carolina (NCNB), petitioned the district court to withdraw the reference to the bankruptcy court. Although the claims involved are "core" proceedings, see 28 U.S.C. § 157(b)(2)(F), (H), which normally fall within the bankruptcy court's jurisdiction, NCNB demanded a jury trial, to which the parties agree it is entitled under the Seventh Amendment, see *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 58–59, 64, 109 S.Ct. 2782, 2799, 2802, 106 L.Ed.2d 26 (1989) (defendant in preference and fraudulent transfer action brought by trustee who has not entered a claim against estate entitled to jury trial), and the parties dispute whether the bankruptcy court has the statutory and constitutional authority to conduct such a proceeding. After the district court denied NCNB's petition, based upon its conclusion that bankruptcy courts may conduct jury trials, *In re Grabill Corp.,* 133 B.R. 621 (N.D.Ill.1991), NCNB brought this interlocutory appeal under 28 U.S.C. § 1292(b). *In*

1. *See Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 50, 109 S.Ct. 2782, 2794–95, 106 L.Ed.2d 26 (1989); *In re Ben Cooper, Inc.,* 896 F.2d 1394 (2d Cir.), *cert. granted,* —— U.S. ——, 110 S.Ct. 3269, 111 L.Ed.2d 779, *vacated and remanded,* ——

U.S. ——, 111 S.Ct. 425, 112 L.Ed.2d 408 (1990), *reinstated,* 924 F.2d 36 (2d Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 2041, 114 L.Ed.2d 126 (1991).

*re Jartran, Inc.,* 886 F.2d 859, 865 (7th Cir.1989); *In re Moens,* 800 F.2d 173, 177 (7th Cir.1986). The sole issue before us is whether the bankruptcy court has authority to conduct a jury trial in this core proceeding.

The history and legal arguments relevant to this issue have been discussed extensively in numerous judicial opinions on the matter. We assume familiarity with those decisions, as well as the pertinent commentary, *see, e.g.,* S. Elizabeth Gibson, *Jury Trials and Court Proceedings: The Bankruptcy Judge's Uncertain Authority,* 65 Am.Bankr.L.J. 143 (Winter 1991); Anthony Michael Sabino, *Jury Trials, Bankruptcy Judges, and Article III: A Constitutional Crisis of the Bankruptcy Court,* 21 Seton Hall L.Rev. 258 (1991); *Symposium on Jury Trials in Bankruptcy Court,* 65 Am. Bankr.L.J. 1 (Dedication Issue 1991), and limit our discussion primarily to the rationales upon which we ground our decision.

At the outset, we note that the circuits are divided three to one on the issue. The Second Circuit (the first to address the issue) held that bankruptcy courts may conduct jury trials. *See In re Ben Cooper, Inc.,* 896 F.2d 1394 (2d Cir.), *cert. granted,* — U.S. — , 110 S.Ct. 3269, 111 L.Ed.2d 779, *vacated and remanded,* 111 S.Ct. 425, 112 L.Ed.2d 408 (1990), *reinstated,* 924 F.2d 36 (2d Cir.), *cert. denied,* — U.S. — , 111 S.Ct. 2041, 114 L.Ed.2d 126 (1991). The Sixth, Eighth, and Tenth Circuits held otherwise. *See In re Baker & Getty Fin. Servs., Inc.,* 954 F.2d 1169 (6th Cir.1992); *In re United Missouri Bank, N.A.,* 901 F.2d 1449 (8th Cir.1990); *In re Kaiser Steel Corp.,* 911 F.2d 380 (10th Cir.1990). This divergence is not surprising given the ambiguous statute and legislative history. There is no express statu-

tory authority in the Bankruptcy Amendments and Federal Judgeship Act of 1984 (BAFJA) granting bankruptcy courts the power to conduct jury trials; even the Second Circuit recognizes this. *See Ben Cooper,* 896 F.2d at 1402. The issue, then, is whether such power may be implied. Discerning any intent here is no easy task.

We start, as we must, with the language of the statute. BAFJA's only provision related to jury trials, 28 U.S.C. § 1411, preserves this right for personal injury and wrongful death actions.[2] Section 157(b)(5) requires that such actions be tried in the district court. Under one view, the express preservation of the right to jury trial for a specific class of cases suggests that Congress intended no such right in all other bankruptcy matters, and that the bankruptcy court lacks authority to conduct jury trials. *See* Sabino, *Constitutional Crisis, supra,* at 300–01. Under the competing view, these provisions do not preclude but rather, support jury trials in bankruptcy court, because the statute specifies that only personal injury and wrongful death jury trials must be held in nonbankruptcy courts.[3] *See* Gibson, *Uncertain Authority, supra,* at 157–58; *see, e.g., In re Cohen,* 107 B.R. 453 (Bankr.S.D.N.Y.1989); *cf. Granfinanciera,* 492 U.S. at 40–41 n. 3, 109 S.Ct. at 2789 n. 3 ("Although [§ 1411(a)] might suggest that jury trials are available only in personal injury and wrongful death actions, that conclusion is debatable. Section 1411(b) ... suggest[s] that the court lacks similar discretion to deny jury trials on at least some issues presented in connection with voluntary petitions."). In *In re Hallahan,* 936 F.2d 1496 (7th Cir.1991), we indicated our preference for the former interpretation. The predecessor statute to § 1411, 28 U.S.C.

---

**2.** Section 1411 provides:

(a) Except as provided in subsection (b) of this section, this chapter and Title 11 do not affect any right to trial by jury that an individual has under applicable nonbankruptcy law with regard to a personal injury or wrongful death tort claim.

(b) The district court may order the issues arising under section 303 of Title 11 [dealing with involuntary bankruptcy petitions] to be tried without a jury.

28 U.S.C. § 1411.

**3.** And then there is the realist view:

It is an open secret that in order to obtain a quick solution to the recent bankruptcy dilemma, Congress inserted the right to jury trial in personal injury and wrongful death claims as a compromise with the lawyers who represent personal injury plaintiffs.

*In re Clark,* 75 B.R. 337, 339–40 (Bankr.N.D.Ala. 1987).

§ 1480(a), conferred broader jury trial rights than § 1411 and "was apparently repealed by the 1984 Amendments." *Granfinanciera,* 492 U.S. at 40–41 n. 3, 109 S.Ct. at 2789–90 n. 3. In *Hallahan,* we stated that, if § 1411 is read on the assumption that § 1480 was repealed by BAFJA, "we would prefer the [narrow] interpretation giving effect to the clear language of Subsection (a)"—*i.e.,* "the view that the statute intends to grant jury trials in bankruptcy court only in personal injury and wrongful death actions"—rather than the interpretation that some broader jury trial right is implied that would enforce the negative implication arising out of subsection (b). *Hallahan,* 936 F.2d at 1507.

Other provisions are no more revealing. The provision granting bankruptcy judges the authority to "hear and determine" all core proceedings, 28 U.S.C. § 157(b)(1), likewise is readily susceptible to differing interpretations. It might be construed that bankruptcy *judges* may hear and determine all core proceedings. *See Kaiser,* 911 F.2d at 391 (plain language of § 157(b)(1) that "[b]ankruptcy judges hear and determine" indicates Congress granted "the bankruptcy judges the *personal* power to hear and determine cases") (emphasis in original). On the other hand, it could be interpreted that bankruptcy judges may hear and determine *all* core proceedings. *See* Gibson, *Uncertain Authority, supra,* at 157 & n. 113 (broad grant of authority over *"all* core proceedings" "is unqualified, and draws no distinction between jury and bench trials.") (emphasis in original).

Nor is the legislative history enlightening. To take one example, although the 1978 Act granted bankruptcy judges the authority to conduct jury trials, the Emergency Rules adopted in response to *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), prohibited bankruptcy judges from doing so. *See* Emergency Rule (d)(1)(D), *reprinted in* 1 Collier on Bankruptcy ¶ 3.01(1)(b)(vi), at 3–17 (15th ed. 1992). BAFJA, in turn, did not incorporate the Emergency Rules' explicit prohibition. Under one view, since the 1984 Act essentially endorsed the Emergency Rules and was promulgated in response to *Northern Pipeline,* "if anything can be gleaned ... it is that Congress intended to continue the Emergency Rule's prohibition against bankruptcy judges conducting jury trials." *United Missouri,* 901 F.2d at 1455 n. 16. Another view holds that although the Emergency Rules "apparently served as the model for the 1984 amendments," the fact that Congress chose not to enact their prohibition against jury trials in the bankruptcy courts "suggests that Congress did not intend to restrict bankruptcy judges' authority in this manner." Gibson, *Uncertain Authority, supra,* at 158; *see also In re Stoecker,* 117 B.R. 342, 346 (Bankr.N.D.Ill.1990); *Citibank, N.A. v. Park–Kenilworth Indus., Inc.,* 109 B.R. 321 (Bankr.N.D.Ill.1989). This illustration is, unfortunately, representative of BAFJA as a whole. Hence, we agree with the view that any attempt to glean implied congressional authorization from the scant legislative history amounts to "an illusory search." *In re Jackson,* 118 B.R. 243, 243 (Bankr.E.D.Pa.1990); *see also United Missouri,* 901 F.2d at 1456; *In re Grabill,* 132 B.R. 725 (N.D.Ill.1991).

Absent any discernible intent from either statutory language or legislative history, we are reluctant to *infer* in BAFJA authority that Congress has not in any clear manner *conferred.* It is well established that "Congress vests Bankruptcy Courts with their jurisdiction and their authority has no 'inherent' source." *In re Sequoia Auto Brokers, Ltd.,* 827 F.2d 1281, 1284 (9th Cir.1987); *see Ex Parte Bakelite Corp.,* 279 U.S. 438, 449, 49 S.Ct. 411, 412–13, 73 L.Ed. 789 (1929). In determining whether Congress vested in bankruptcy courts the power to conduct jury trials, we are admonished that "[j]urisdictional statutes are to be construed 'with precision and with fidelity to the terms by which Congress has expressed its wishes.'" *Palmore v. United States,* 411 U.S. 389, 396, 93 S.Ct. 1670, 1675, 36 L.Ed.2d 342 (1973) (quoting *Cheng Fan Kwok v. INS,* 392 U.S. 206, 212, 88 S.Ct. 1970, 1974, 20 L.Ed.2d 1037 (1968)). To that end, we note that congressional response to *Northern Pipeline* greatly re-

duced the independent authority of bankruptcy judges. Significant, for example, is the repeal of the provision that had clothed bankruptcy judges with the "powers of a court of equity, law and admiralty." *See* 28 U.S.C. § 1481 (repealed). No similar provision exists under the 1984 Act; rather, § 151 explicitly provides that bankruptcy judges may only "exercise the authority *conferred* under" the 1984 Act. 28 U.S.C. § 151 (emphasis added).

In addition to the lack of a specific grant of authority, no present Bankruptcy Rule provides for jury trials. *See Baker & Getty,* 954 F.2d at 1173. Although Federal Rule of Bankruptcy Procedure 9015 once provided for jury trials,[4] the rule was abrogated "in light of the clear mandate of 28 U.S.C. § 2075 that the 'rules should not abridge, enlarge or modify any substantive right.'" *Id.* (quoting Committee Note to Abrogation of Bankr.R. 9015); *see also Ben Cooper,* 896 F.2d at 1403. Despite the fact that Rule 9015 did not confer a jury trial right, but rather provided a procedural mechanism allowing a jury trial should the right exist and a proper demand be made, "it was because courts were mistakenly interpreting the rule to supply a substantive right that the rule was abrogated." *Hallahan,* 936 F.2d at 1506.

We agree with the Tenth Circuit that the language of § 157(b)(1) ("Bankruptcy judges may hear and determine....") indicates that the power conferred is a personal one, limited to bankruptcy *judges.* This is more than a matter of semantics. In other circumstances, Congress has seen fit to employ explicit language in providing for jury trial authority. *See, e.g.,* 28 U.S.C. § 636(a)(3), (c)(1) ("Upon the consent of the parties, a full-time United States magistrate ... may conduct any or all proceedings in a jury ... civil matter...."); *cf.* District of Columbia Court Reform and Criminal Procedure Act of 1970, Pub.L. No. 91–358, §§ 11–1901 *et seq.,* 84 Stat. 551, 601 (discussion of juror selection in enabling statute for District of Columbia Supreme Court).[5] We are entitled to assume that Congress legislated with care in amending the Bankruptcy Act, and that had it intended to provide for jury trials in bankruptcy court, it would "not [have] left the matter to mere implication." *See Palmore,* 411 U.S. at 395, 93 S.Ct. at 1675. A unanimous Supreme Court in *Gomez v. United States,* 490 U.S. 858, 875–76, 109 S.Ct. 2237, 2247–46, 104 L.Ed.2d 923 (1989), for example, in determining that the Federal Magistrates Act does not, absent consent of the parties, allow the delegation of jury selection to a magistrate judge, noted specifically that "[t]he absence of a specific reference to jury selection in the statute, or indeed, in the legislative history, persuades us that Congress did not intend the additional duties clause to embrace this function." Similarly, in *Palmore v. United States,* the Court was faced with whether a District of Columbia statute allowing for felony jury trials in the District of Columbia court system was a "statute of any state" for purposes of 28 U.S.C. § 1257, which specifies the circumstances under which the final judgments of the highest court of a state may be reviewed by the Supreme Court. According to the Court, although Congress had amended § 1257 to include the District of Columbia Court of Appeals in the term "highest court of a State," it did not follow that the District Code was to be considered a state statute for purposes of § 1257, as "[a]n express provision 'would have been easy.'" *Palmore,* 411 U.S. at 395 n. 5, 93 S.Ct. at 1675 n. 5 (quoting *Farnsworth v. Montana,* 129 U.S. 104, 113, 9 S.Ct. 253, 32

---

4. Rule 9015(a) read as follows:

    (a) Trial by jury. Issues triable of right by jury shall, if timely demanded, be tried by a jury, unless the parties or their attorneys of record by written stipulation filed with the court or by an oral stipulation made in open court and entered in the record, consent to trial by the court sitting without a jury.

5. Although the jury trial provision in the 1978 Bankruptcy Act did not expressly provide authority for bankruptcy judges to conduct jury trials, the power was apparent both from the Act's "extremely broad grant of jurisdiction," *see United Missouri,* 901 F.2d at 1453, and from the legislative history. *See, e.g., id.* at 1453 n. 10 ("Bankruptcy courts will be required to hold jury trials....") (quoting H.R.Rep. No. 595, 95th Cong., 1st Sess. 12 (1977) (reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5963, 5973)).

L.Ed. 616 (1889)). Here, too, an express provision providing for jury trials in bankruptcy court "would have been easy" in promulgating BAFJA, and, absent any such provision, we decline to find this authority.

We do not find the result an incongruent reading of § 157. That section, to reiterate, provides that in "core" proceedings the bankruptcy judge may "hear and determine" the claim and "enter appropriate orders and judgments," subject to review by the district court. 28 U.S.C. § 157(b)(1). In non-core proceedings, the bankruptcy judge may "hear" the case, but may only issue proposed findings of fact and conclusions of law, both of which are subject to *de novo* review in the district court. *Id.* § 157(c)(1). It is entirely reasonable to read this as explicating a general framework for the role of the bankruptcy judge—the "hear" language of § 157(c)(1) envisioning limited authority in non-core proceedings, and the "hear and determine" language providing for a greater power in core matters. Indeed, this framework would appear to mirror that found in the Magistrates Act—*see* 28 U.S.C. § 636(b)(1)(A) ("a judge may designate a magistrate judge to hear and determine any pretrial matter" subject to certain exceptions and to reconsideration if "clearly erroneous or contrary to law") and *id.* § 636(b)(1)(B) ("a judge may also designate a magistrate to conduct hearings ... and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court....")—whose jury trial provision is delineated separately. *See id.* § 636(c).[6] Moreover, when a magistrate judge has conducted a jury trial pursuant to this explicit authority, the Magistrates Act provides that an appeal may be taken directly to the court of appeals "in the same manner as an appeal from any other judgment of a district court." *Id.* § 636(c)(3). No like provision exists in BAFJA, which pro-

vides only that appeal be taken to the district court. *Id.* § 158. A natural reading of BAFJA indicates that for those bankruptcy cases in which a jury trial right exists, the district court has the authority under § 157(d) to withdraw the matter, in whole or in relevant part, from the bankruptcy court. *See id.* § 157(d).

The trustee argues that if "a judge is not empowered to conduct a jury trial unless Congress expressly says so ... then even district courts could not conduct such trials...." Appellee's Br. at 8; *see also* S. Elizabeth Gibson, *Jury Trials in Bankruptcy: Obeying the Commands of Article III and the Seventh Amendment,* 72 Minn.L.Rev. 967, 1028 n. 289 (1988) (asserting that district courts' "authority to preside over jury trials is clearly implicit in the grant of jurisdiction to them over matters at law. The same conclusion could be reached concerning bankruptcy judges."). In our view, however, this overlooks a relevant distinction between the two: bankruptcy courts and other Article I tribunals are ordinary creatures of statute, *see Northern Pipeline,* 458 U.S. at 50, 65, 86–87, 102 S.Ct. at 2858, 2868, 2879–80, and derive their authority solely from Congress, while district courts are accorded their inherent powers in Article III. *See In re Hughes–Bechtol, Inc.,* 107 B.R. 552, 570 (Bankr.S.D.Ohio 1989) ("[I]t must be remembered that [district courts] have the essential attributes of life tenure and irreducible salary consistent with the full judicial authority of Article III.... It is more significant to note that United States Magistrates have specific statutory authority expressly stating the circumstances under which they may conduct jury trials."). As the Fifth Circuit recognized in determining that bankruptcy courts do not have inherent criminal contempt powers, "when Congress has intended non-Article III adjudicatory entities to possess criminal contempt power, it has statutorily granted those powers." *In re Hipp, Inc.,* 895 F.2d 1503,

---

**6.** Indeed, in *Gomez v. United States,* 490 U.S. 858, 874 n. 28, 109 S.Ct. 2237, 2247 n. 28, 104 L.Ed.2d 923 (1989), the Supreme Court deemed "meritless" a contention by the government that jury selection was among the pretrial matters

that a magistrate judge may "hear and determine" under § 636(b)(1)(A), albeit primarily on the ground that jury selection is more akin to the matters governed by § 636(b)(1)(B).

1513 (5th Cir.1990) (citing as examples military courts, territorial courts, and the District of Columbia courts). Bankruptcy courts likewise have no inherent authority to conduct jury trials, and are limited to those powers conferred by statute.

It is significant that subsequent to *Northern Pipeline*, Congress twice declined to elevate the bankruptcy courts to Article III status. *See* Vern Countryman, *Scrambling to Define Bankruptcy Jurisdiction: The Chief Justice, the Judicial Conference, and the Legislative Process*, 22 Harv.J. on Legis. 1, 29–32 (1985). Those non-Article III tribunals whose authority to conduct jury trials has been upheld either have been given explicit authority to do so, as have magistrate judges, *see* 28 U.S.C. § 636(c), or play particularly unique roles in the federal scheme. District of Columbia courts, for example, "function as state courts much like territorial courts do," *see Hipp*, 895 F.2d at 1514; in reorganizing the District of Columbia court system, Congress established one set of courts with Article III characteristics and devoted to matters of national concern, and "a wholly separate court system designed primarily to concern itself with local law and to serve as a local court system for a large metropolitan area." *Palmore*, 411 U.S. at 408, 93 S.Ct. at 1681. Likewise, territorial courts "have not been deemed subject to the strictures of Art. III.... In legislating for them, Congress exercises the combined powers of the general, and of a state government." *Id.* at 403, 93 S.Ct. at 1679 (quoting *American Ins. Co. v. Canter*, 1 Pet. 511, 546, 7 L.Ed. 242 (1828)).

Our conclusion is also influenced by the constitutional issue lurking in the background. It is a long-established precept that we should "avoid an interpretation of a federal statute that engenders constitutional issues if a reasonable alternative poses no constitutional question." *United Missouri Bank*, 901 F.2d at 1456–57 (quot-

ing *Gomez v. United States*, 490 U.S. 858, 864, 109 S.Ct. 2237, 2241, 104 L.Ed.2d 923 (1989) (Federal Magistrates Act, 28 U.S.C. § 636(b)(3))); *see also Hipp*, 895 F.2d at 1509. We recognize, of course, that this canon does not give us "the prerogative to ignore the legislative will in order to avoid constitutional adjudication." *See Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 841, 106 S.Ct. 3245, 3251–52, 92 L.Ed.2d 675 (1986). At the same time, however, we are mindful that the Supreme Court continues to adhere to this canon, *see, e.g., Burns v. United States*, — U.S. —, 111 S.Ct. 2182, 2187, 115 L.Ed.2d 123 (1991); *Gomez*, 490 U.S. at 864, 109 S.Ct. at 2241; *Crowell v. Benson*, 285 U.S. 22, 62, 52 S.Ct. 285, 296–97, 76 L.Ed. 598 (1932), and it is only appropriate that we do the same.

Finally, we are unpersuaded by pragmatic arguments. *See, e.g.*, Appellee's Br. at 8 ("policy of efficient judicial administration further weighs in favor of jury trials in bankruptcy courts."). Admittedly, efficiency was a key premise in developing the modern bankruptcy scheme. *See Granfinanciera*, 492 U.S. at 61–62 n. 16, 109 S.Ct. at 2801 n. 16 ("sweeping changes Congress instituted in 1978 were clearly intended to make the reorganization process more efficient.... [E]nhanced efficiency was likely Congress' aim once again [in 1984].").[7] We are not persuaded, however, that withdrawing the reference for those matters requiring jury trials would necessarily undercut the effectiveness of the system or hamper its overall viability.

First, as to suggestions that parties may attempt to engage in stategic behavior by requesting a jury trial in the district court in order to delay proceedings, the Supreme Court found similar concerns overstated in finding a jury trial right for fraudulent transfer claims. *Granfinanciera*, 492 U.S. at 63 n. 17, 109 S.Ct. at 2801 n. 17;[8] *see*

---

7. Some 943,987 bankruptcy cases were filed in 1991, and as of December 31, 1991, 1,192,281 cases were pending. *See* Federal Judicial Workload Statistics at 72, Admin. Office of the U.S. Courts (Dec. 31, 1991).

8. It warrants notice, however, that the provision of jury trials in fraudulent conveyance actions has apparently not been attended by substantial difficulties under previous bankruptcy statutes; that respondent has not pointed to any discussion of this allegedly serious problem in the

*also Grabill,* at n. 3 ("In the two years since *Granfinanciera* established the jury trial right and notwithstanding ever-increasing bankruptcy filings, we have yet to see in this district a rash, or even a discernible shift, toward jury demands in bankruptcy cases."). In our view, the same reasoning applies here; moreover, if strategizing behavior is a possibility, it is so whether jury trial authority rests with the bankruptcy courts or district courts. *See* Douglas G. Baird, *Jury Trials After Granfinanciera,* 65 Am.Bankr.L.J. 1, 11 (1991) (noting opportunities for strategic behavior with jury trial right in bankruptcy court).

As to systemic efficiency concerns, we note that it is quite plausible that retaining jury trials within bankruptcy courts, rather than referring them to district courts, could actually impede efficiency within the system as currently constituted.

There are practical reasons why jury trials are not compatible with [a bankruptcy] court's normal judicial activity.... [J]ury trials are, by nature, more time consuming then [sic] bench trials, and one could conclude that the court's docket and case pace demands do not accommodate jury trials. This court is not physically equipped nor staffed to properly and efficiently handle jury panels and trials. The rapid pace of bankruptcy cases and proceedings do not mesh with jury procedures. Congress enacted the Bankruptcy Code to provide a prompt resolution of all bankruptcy causes of action in order to expedite the settlement of the debtor's estate. Jury trials would dismember the statutory scheme. Taken in isolation, this adversary proceeding would not destroy this Court's functions. To permit jury trials as a general concept is another issue.

*In re G. Weeks Securities, Inc.,* 89 B.R. 697, 710 (Bankr.W.D.Tenn.1988) (citations omitted); *see also Baker & Getty,* 954 F.2d at 1173 ("[Congress] intended to create a specialized court to handle bankruptcy matters in an expedited and efficient manner. The system is not set up to handle lengthy jury trials. To introduce this method of litigation into the system would be at the expense of all other matters handled by the bankruptcy courts. This Court does not believe such a result was intended by Congress....") (quoting *Ellenberg v. Bouldin,* 125 B.R. 851, 854 (Bankr.N.D.Ga.1991)); *Hughes–Bechtol,* 107 B.R. at 572 (same) (citing cases).[9]

In our view, it would be venturesome to hold that bankruptcy courts are impliedly empowered by BAFJA to conduct jury trials in core proceedings. Although our determination may be "a choice between uncertainties," *see Cheng Fan,* 392 U.S. at 215, 88 S.Ct. at 1975–76 (quotation omitted), given the factors militating against finding implied authority—significantly, the textual ambiguity and the sparse legislative history—we choose that which requires the lesser reach. Accordingly, for the reasons expressed above, as well as those delineated by the Sixth, Eighth, and Tenth Circuits, we hold that the Bankruptcy Code, as amended by the 1984 Act, does not authorize bankruptcy judges to conduct jury trials. Where a jury trial is required by the Seventh Amendment, that trial must be held in the district court, sitting in its original jurisdiction in bankruptcy.

The district court's order is REVERSED and the case is REMANDED for further proceedings in accordance with this opinion. The district court is directed to withdraw the reference and to conduct a jury trial

legislative history of the 1978 Act or the 1984 Amendments; that in many cases defendants would likely not request jury trials; that causes of action to recover preferences may be assigned pursuant to the plan of reorganization rather than pursued prior to the plan's approval, as was done in this very case, and that Congress itself, in enacting 28 U.S.C. § 1411, explicitly provided for jury trials of personal injury and wrongful death claims, which would likely take

much longer to try than most preference actions and which often involve large sums of money. *Granfinanciera,* 492 U.S. at 63 n. 17, 109 S.Ct. at 2801 n. 17.

9. Given this, we do not believe it a foregone conclusion that Congress, had it known that the Supreme Court in *Granfinanciera* would preserve jury trial rights for certain bankruptcy core proceedings, would have provided for such a right within the bankruptcy court.

with respect to those issues for which a timely demand for jury trial was made.

POSNER, Circuit Judge, dissenting.

The intricate interpretive maneuvers that lawyers use to answer questions of statutory meaning lead nowhere in this case, because in this case for every dialectic or casuistic thrust there is an equally persuasive parry. On the one hand the statute says that "bankruptcy *judges* [not juries] may hear and determine . . . all core proceedings," but on the other hand this can be read as "bankruptcy judges may hear and determine . . . *all* core proceedings [whether they are jury or nonjury cases]." It is all a matter of emphasis. If, on the one hand, as just noted, the statute does not expressly authorize jury trials, as the magistrates' act for example does, on the other hand the Seventh Amendment was held to entitle the defendants in *Curtis v. Loether,* 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974), to a jury trial even though the statute under which they had been sued was silent on the question. On the one hand the Bankruptcy Rules make no provision for jury trial, but on the other hand the provision for jury trial that the rules once contained was deleted in order to leave the question up to the courts. And so it goes. One marvels at the learning and ingenuity of the adversaries but is brought no nearer to a sense of what the statute means. The majority opinion, with refreshing candor, reports the parries as well as the thrusts, but insists that the statute has a meaning and that the court has found it.

I think on the contrary that we have here an unbridgeable, unpluggable statutory gap. A question—whether bankruptcy judges can conduct jury trials in matters in which the Seventh Amendment entitles the parties to trial by jury—has arisen the answer to which cannot be found in the statute. The question is not addressed in the Bankruptcy Code because at the time the Code was adopted the question was not a live one. There had been no right to a jury trial under the old bankruptcy law. Douglas G. Baird, "Jury Trials After *Granfinanciera,*" 65 *Am.Bankr.L.J.* 1, 2–4 (1991).

Apparently everyone had been content with that regime. But then Congress, without considering the possible implications for the right to a jury trial in bankruptcy, enlarged bankruptcy jurisdiction to the point where it embraced proceedings, such as a trustee's action for fraudulent conveyance against a transferee of the debtor, that the Supreme Court later held to be actions at law within the meaning of the Seventh Amendment, even though the proceeding was filed in bankruptcy court, as part of a bankruptcy case. *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989). The Court did not decide who should conduct the trial—the bankruptcy judge or the district judge. And Congress had never even dreamed there *was* such a question. We must decide. We are entirely on our own and can find no assistance in statutory text, legislative history, precedent, or other sources of guidance to statutory meaning.

We ought in these circumstances to base our decision on practical considerations, and they all line up on the side of allowing bankruptcy judges to conduct jury trials. The main advantage is that it avoids shifting a case, or rather part of a case, from one tribunal and one judge—the bankruptcy court and bankruptcy judge—to another—the district court and the district judge. Such a shift, which not only interrupts an ongoing proceeding and shoves it into a different court but also breaks a single bankruptcy among courts, is wasteful of the time and resources of litigants and judges and injects extraneous considerations into a party's decision on whether to demand a jury trial. In the federal system at least, a demand for a jury trial is not a demand for a different judge, let alone for a different kind of judge. But under the view taken by the court in this case, a party to a bankruptcy proceeding who for whatever reason would like to have a different judge has an incentive to demand trial by jury that is unrelated to the ordinary considerations that motivate such a demand. Juries will be dragged into cases because litigants dislike particular judges.

The advantage that I have just described of allowing bankruptcy judges to conduct jury trials would count for little if such judges were incompetent to conduct them. They are competent, even though they do not have life tenure, as federal district judges do. Very few state trial judges have life tenure either, yet the vast majority of jury cases in this country are tried in state courts and we do not hear howls of protest. Many federal judicial officers—not just bankruptcy judges—lack life tenure yet conduct jury trials. Judges of the District of Columbia superior court are one example. Judges of the territorial courts are another. What used to be called U.S. commissioners, then federal magistrates, now federal magistrate judges have similar although not identical conditions of tenure and compensation as bankruptcy judges, compare 28 U.S.C. §§ 152(a)(1), (e), 153(a), with 28 U.S.C. §§ 631(e), (i), 634(a), yet they are expressly empowered to conduct jury trials, provided that the parties consent. I once questioned the constitutional power of magistrates to conduct jury trials, *Geras v. Lafayette Display Fixtures, Inc.*, 742 F.2d 1037, 1045, 1048–49 (7th Cir.1984) (dissenting opinion), but that was because I doubted the power of Article I judges to try Article III cases, and that is not an issue here. The major difference between magistrate judges and bankruptcy judges, that the latter have a longer tenure—14 years versus 8—makes the case for allowing bankruptcy judges to conduct jury trials stronger than the case for allowing magistrate judges to do so.

Of course a requirement that the parties consent, which we find in the magistrates' act, makes a difference. But I do not suppose that Congress would allow federal cases to be tried before panels of astrologers, necromancers, clairvoyants, or judges of cat shows or (other) beauty contests provided only that the litigants consented. Congress must have thought that magistrate judges were competent to conduct jury trials and if they are, so must bankruptcy judges be. It would be a mistake to infer from the fact that Congress required consent for trials before magistrates that it would have required consent for jury trials before bankruptcy judges had the issue arisen. The magistrates' statute does not require consent to a *jury* trial before a magistrate judge, but to *any* trial before a magistrate judge. Their entire trial jurisdiction is consensual. 28 U.S.C. § 631(c); *Geras v. Lafayette Display Fixtures, Inc.*, *supra*, 742 F.2d at 1041–42. The bankruptcy trial jurisdiction is not.

Since the same rules of evidence apply in bench and in jury trials, the biggest differences between the two sorts of trial from the judge's standpoint are jury voir dire and jury instructions. Any competent judicial officer can voir dire or instruct a jury. Although we held in *Olympia Hotels Corp. v. Johnson Wax Development Corp.*, 908 F.2d 1363, 1368–69 (7th Cir.1990), that a magistrate judge cannot conduct a voir dire without the parties' consent even in a civil case, that consent is easily obtained. Many district judges now use magistrate judges routinely to voir dire the jury not only in civil cases but also in criminal cases (an authorized procedure, provided, once again, that the defendant consents, *Peretz v. United States*, —— U.S. ——, 111 S.Ct. 2661, 115 L.Ed.2d 808 (1991)), and use law clerks to draft jury instructions—when they don't just take instructions tendered by the litigants or copied out of pattern jury instruction books. I do think it is somewhat more challenging to conduct a jury trial than a bench trial but I do not think the additional challenge is beyond the capacity of bankruptcy judges—experienced, specialized judicial officers who since 1982 have been selected on a meritocratic, nonpolitical basis. Political considerations play a greater role in the appointment of Article III judges, so we should not be astonished that a recent report found "that the Bankruptcy Court now has the best bench, top to bottom, of any court in the City of Chicago." "Council of Lawyers' Report on Bankruptcy Court," *Chicago L. Bull.*, Jan. 13, 1992, at 2. That is just one city but I would not be surprised if the result were general. It is true that bankruptcy judges are not likely to conduct a great many jury trials, but law is not like surgery: you don't have to conduct a jury trial every day to maintain your skills.

The emphasis placed on the fact that bankruptcy judges do not have life tenure

is misguided, because whatever the significance of life tenure—however strong the case for giving judicial officers such tenure—it has nothing to do with any difference between bench trials and jury trials. If only a judicial officer with life tenure can be trusted to render exact and impartial justice under law, this is as true in bench trials as in jury trials. In fact it is *more* true in bench trials, because in bench trials the judge bears the sole decisional responsibility, while in jury trials he divides it with private citizens. The right to a jury, insofar as it is a limitation on judges' power, is more needful the less trustworthy the judge is.

We should be realistic. The question whether to allow bankruptcy judges to conduct jury trials has not been answered for us by Congress. It has been left to us. We should decide it in the way most consistent with sensible judicial administration, and without concern that Article I judicial officers may appear to be encroaching on the turf—usurping the prerogatives—of Article III judges. We should answer the question "yes."