**In re Eugene Walter ALPERN, Debtor.**

**Nos. 94 C 7479, 93 B 7643.**

United States District Court,
N.D. Illinois,
Eastern Division.

Nov. 1, 1995.

108

Lawrence Fisher, Chicago, IL, for Trustee.

Eugene Walter Alpern, pro se.

## MEMORANDUM OPINION

GRADY, District Judge.

Lawrence Fisher, Trustee of the bankruptcy estate of the debtor, Eugene Walter Alpern, has moved to withdraw reference, pursuant to 28 U.S.C. § 157(d), of contempt proceedings against the debtor initiated in the bankruptcy court. For the reasons stated in this opinion, the motion is denied and the case is remanded to Bankruptcy Judge Thomas James with directions that he conduct a civil contempt proceeding pursuant to Rule 9020 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

Alpern filed a voluntary petition for bankruptcy under Chapter 7 of the Bankruptcy Code on April 8, 1993. The case was converted to a Chapter 11 proceeding on June 28, 1993, and then was converted back to a Chapter 7 proceeding on December 20, 1993. Lawrence Fisher was appointed Trustee of the bankruptcy estate. In an effort to obtain funds with which to satisfy Alpern's creditors, the Trustee requested that a real estate broker be employed to sell the Alpern residence. Judge James entered an order authorizing the Trustee to retain a broker and requiring Alpern to deliver the key to the broker so that the property could be shown to prospective buyers. Alpern failed to comply with the order. He filed a notice of appeal from the order, but never obtained a stay pending the appeal.

The Trustee then moved for a rule to show cause, asking that Alpern be held in civil contempt for his failure to comply with the court's order. Judge James ruled that the bankruptcy court is not empowered to issue contempt orders. The Trustee then filed this motion to withdraw the reference so that we could conduct contempt proceedings.

In response to the motion, Alpern has filed two documents. The first is a "Motion Challenging the Subject Matter Jurisdiction of this District Court." The second is a "Motion to Vacate the Null and Void Orders of the Illinois 91–D–5122 Judge." He has also filed, with leave of court, a "Response to Trustee's Reply." Alpern's latest motion is a "Motion to Declare Void the Orders of the Illinois 91–D–5122 Judge," which is in substance similar to his previous filings. These documents, which collectively constitute Alpern's response to the motion to withdraw reference, challenge our subject matter jurisdiction.

## DISCUSSION

### I. Subject Matter Jurisdiction

We begin by putting to rest Alpern's arguments questioning both our jurisdiction and the validity of judgments in prior state court proceedings. Alpern asserts that because the Trustee, in one of his briefs in this court, has referred to a state court divorce judgment against Alpern, we must inquire into the validity of that judgment. Alpern claims that the state court proceeding was conducted without jurisdiction, and that unless we vacate that judgment we lose our own jurisdiction.[1]

The subject matter jurisdiction of the federal district court is established by federal statute in accord with Article III of the Constitution. U.S. Const. art. III, §§ 1–2; 28 U.S.C. §§ 1330–1368. The filing of a voluntary petition for bankruptcy under Title 11 of the United States Code constitutes an "order for relief" under the relevant chapter of the bankruptcy code. 11 U.S.C. § 301. The effect of the order for relief is to set in place the automatic stay provisions of the code, which temporarily protect the debtor from further collection actions by creditors so that he may organize an orderly payment of his debts. 11 U.S.C. § 362; see, Price v. Rochford, 947 F.2d 829, 831 (7th Cir.1991). Congress has specifically granted exclusive jurisdiction of all cases brought under the bankruptcy code to the district court. 28 U.S.C. § 1334(a). Consequently, when Alpern filed his voluntary petition for bankruptcy, this court properly acquired jurisdiction over his case. Pursuant to 28 U.S.C. § 157(a) and Local General Rule 2.33, this

---

1. From what we can discern from the limited record, the divorce proceeding to which Alpern is referring is the claim for dissolution of marriage filed by his wife. Alpern has apparently been held in contempt in the state court for failure to pay the judgment awarded to his former wife. She is listed among Alpern's creditors in this bankruptcy proceeding.

court referred the case to a bankruptcy judge.

Alpern claims that the Illinois court entered a divorce judgment against him when it had no jurisdiction to do so. Because of this lack of jurisdiction, Alpern argues, the bankruptcy court is obliged to vacate the divorce judgment. Failure to do so would violate Alpern's due process rights and constitute an abdication of *federal* jurisdiction.

■ It is difficult to know where to begin an analysis of this convoluted argument. It is clear that this court and the bankruptcy court have no power to vacate a state court judgment. Any attempt to do so would run afoul of the Rooker–Feldman doctrine, which teaches that lower federal courts have no jurisdiction to reexamine the decisions of state tribunals in civil litigation.[2] *Homola v. McNamara*, 59 F.3d 647, 650 (7th Cir.1995); *Landers Seed Co., Inc. v. Champaign Nat. Bank*, 15 F.3d 729, 732 (7th Cir.1994); *GASH Associates v. Village of Rosemont, Ill.*, 995 F.2d 726, 728 (7th Cir.1993). To suggest that we are required to act beyond our jurisdiction in order to retain our jurisdiction is absurd.

## II. Withdrawal of the Reference

■ Under 28 U.S.C. § 157(a) and Local General Rule 2.33, this court may automatically refer any case under Title 11 of the United States Code to a bankruptcy judge for adjudication in accord with the powers and jurisdiction of the bankruptcy court. Section 157(d) states in relevant part, "the district court may withdraw, in whole or in part, any case referred under this section, on its own motion or on the timely motion of any party, for cause shown."[3] Demonstration of "cause" is not an easy burden, and courts have held that Congress intended for bankruptcy judges to determine complex Title 11 issues to the "greatest extent possi-

ble." *In re Clark*, No. 95 C 2773, 1995 WL 495951, p. 2 (N.D.Ill. Aug. 17, 1995) (citing *In re Stavriotis*, 111 B.R. 154, 156 (N.D.Ill. 1990), *affirmed*, 977 F.2d 1202 (7th Cir. 1992)). However, where a bankruptcy court is not empowered to conduct a given proceeding as a matter of law, such as a jury trial, cause is deemed to exist. *Peachtree Lane Associates, Ltd. v. Granader*, 175 B.R. 232, 235 (N.D.Ill.1994).

■ "It is well-established that 'Congress vests Bankruptcy Courts with their jurisdiction and their authority has no inherent source.'" *Matter of Grabill Corp.*, 967 F.2d 1152, 1154 (7th Cir.1992) (quoting *In re Sequoia Auto Brokers, Ltd.*, 827 F.2d 1281, 1284 (9th Cir.1987)). Bankruptcy courts are created by Congress pursuant to their Article I powers and therefore have none of the inherent powers of Article III courts. *Id.* at 1157–58; *see, also, Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 68–79, 102 S.Ct. 2858, 2869–76, 73 L.Ed.2d 598 (1981).

The Seventh Circuit has not directly addressed the issue of whether Congress has given contempt power to bankruptcy courts. Several other circuits have addressed it, with mixed results. The Fifth Circuit, in *Matter of Hipp, Inc.*, 895 F.2d 1503 (5th Cir.1990), held that because criminal contempt proceedings are like prosecutions for any other offense, bankruptcy courts lack the power to hear and determine such matters. *Id.* at 1507–1508. The Eighth Circuit has held that bankruptcy judges may hear criminal contempt proceedings and make recommendations to the district court of findings of fact and conclusions of law, which would be considered de novo upon objection. *In re Ragar*, 3 F.3d 1174, 1178–79 (8th Cir.1993). The Fourth and Tenth Circuits have both held that a bankruptcy court is empowered by statute to hear and determine civil contempt proceedings. *In re Walters*, 868 F.2d

---

2. We do note, however, that Rooker–Feldman does not preclude Alpern from arguing in his bankruptcy proceeding that the state court judgment obtained is unenforceable in federal court because it is not entitled to full faith and credit under 28 U.S.C. § 1738. *See, Marrese v. American Academy of Ortho. Surgeons*, 470 U.S. 373, 382–83, 105 S.Ct. 1327, 1332–33, 84 L.Ed.2d 274 (1984). Whether the state court judgment is enforceable against Alpern in his bankruptcy proceeding, however, is not germane to the present motion.

3. The Trustee does not contend that this proceeding is subject to the portion of § 157(d) which provides for mandatory withdrawal.

665, 669 (4th Cir.1989); *In re Skinner,* 917 F.2d 444, 447–49 (10th Cir.1990). The Ninth Circuit has held that the same statute confers no such power. *In re Sequoia Auto Brokers, Ltd.,* 827 F.2d 1281, 1288–89 (9th Cir.1987).

While the Seventh Circuit has cited *Matter of Hipp, Inc.,* with approval for the proposition that bankruptcy courts do not have inherent criminal contempt powers, *Matter of Grabill Corp.,* 967 F.2d at 1156–57, it has not made any determination as to civil contempt power. At least one district judge has ruled that a bankruptcy judge is empowered to hear and determine civil contempt proceedings. *In re Schatz,* 122 B.R. 327, 328–29 (N.D.Ill.1990).

■ There can be no dispute that Judge James had jurisdiction to order Alpern to turn over the key to the broker. The jurisdiction of bankruptcy courts is granted by 28 U.S.C. §§ 157(b) and (c). These sections provide that bankruptcy judges may hear and determine matters which are "core proceedings" under the statute, but must submit findings of fact and conclusions of law to a district court for approval after a hearing with respect to noncore proceedings "otherwise related to" a bankruptcy case. *Id.* Where, as here, the bankruptcy court is acting in a core proceeding under § 157(b),[4] it has the jurisdiction to use any contempt powers it may have. We need not address the question of whether there would be a different outcome if the underlying matter were a noncore proceeding under § 157(c).

■ A bankruptcy judge has the authority conferred by statute. 28 U.S.C. § 151. Section 105(a) of the Bankruptcy Code provides that

> [t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest

shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or prevent an abuse of process.

11 U.S.C. § 105(a). The plain meaning of this section is that bankruptcy judges may take any action to enforce their orders, so long as it is "necessary and appropriate." We next look to the Federal Rules of Bankruptcy Procedure, promulgated by the Supreme Court pursuant to the authority granted it in 28 U.S.C. § 2075. The Supreme Court may properly promulgate a rule so long as the rule does not abridge, enlarge or modify substantive rights granted by statute. 28 U.S.C. § 2075. Rules are presumed not to have altered substantive rights unless it can be shown that they directly conflict with language of the statute. *In re Stoecker,* 179 B.R. 532, 538 (N.D.Ill.1994).

■ Rule 9020 of the Bankruptcy Rules specifically provides for contempt proceedings. The rule provides for two types of contempt determinations. Rule 9020(a) states that a bankruptcy judge may make a summary determination of contempt when a violation is committed in his presence. Rule 9020(b) states that a bankruptcy judge may make a determination of contempt for actions outside of his presence, so long as he provides notice and a hearing. Orders of contempt issued by the bankruptcy judge become final 10 days after service, although they may be reviewed de novo by the district court if the affected party files an objection. Fed.Rules Bankr.Proc.Rule 9020(c).

■ Rule 9020 can be considered invalid only if it conflicts with the language of § 105(a). Section 105(a) states only one restriction on the enforcement powers of the court: the action or determination must be "necessary and appropriate." Civil contempt, which is the power to force a defiant person or entity to comply with a court or-

---

4. The core proceeding is a request by the Trustee to gain access to Alpern's residence, an asset of the estate, so that it may be sold and the proceeds used to satisfy creditors. Section 157(b)(2)(A) includes "matters concerning the administration of the estate" as core proceedings. Section 157(b)(2)(O) includes "other pro-

ceedings affecting the liquidation of the assets of the estate ..." as core proceedings. Section 157(b)(2)(N) includes "orders approving the sale of property ..." as core proceedings. Any of these provisions gives the bankruptcy court jurisdiction over the petition to gain access to and sell the house.

der, is sometimes the only means of compelling obedience. It is ordinarily the means of last resort and should not be used if there is a less coercive way of obtaining compliance. But where there is no other way, use of coercion is clearly "necessary and appropriate." In this case, from all that appears from the record, there is no other way.

Because Judge James has the authority to conduct a civil contempt proceeding in accordance with Rule 9020, we find that no good cause has been shown for withdrawing the reference to the bankruptcy court.

### CONCLUSION

The motion of the Trustee for withdrawal of the reference pursuant to 28 U.S.C. § 157(d) is denied. We direct Judge James to conduct a civil contempt proceeding pursuant to Rule 9020 of the Federal Rules of Bankruptcy Procedure to determine whether the exercise of his contempt power is necessary and appropriate to enforce his order requiring the debtor to deliver the key to his house and to make it available for showing by the realtor. If Judge James decides that a civil contempt order is necessary and appropriate for that purpose, he should impose an appropriate civil contempt sanction to induce compliance by the debtor.