**UNITED STATES of America**

v.

**Brenda Eveta DEMURGAS, Defendant.**

**No. 86 CR 689.**

United States District Court,
E.D. New York.

April 10, 1987.

Andrew J. Maloney, U.S. Atty., E.D. of N.Y., Brooklyn, N.Y., Julie Copeland, Asst. U.S. Atty., of counsel, for U.S.

Slotnick & Baker, New York City, Barry Ivan Slotnick, Richard A. Medina, of counsel, for defendant.

BARTELS, District Judge.

This suppression motion involves the application of former 31 U.S.C. § 5317(b) (prior to its October, 1986 amendment), which prohibited currency searches at the border by customs officials absent reasonable suspicion,[1] to two distinct currency searches of defendant Brenda Eveta Demurgas at JFK International Airport on September 25, 1986. The first search, of defendant's hand luggage, revealed over $10,000 in unreported currency, and a later search of her person yielded an additional $130,000 in packets strapped to her waist. She was subsequently charged with violating 31 U.S.C. § 5316(b) (knowingly transporting more than $10,000) and 18 U.S.C. §§ 1001 and 3623 (knowingly making false statements to customs officials) and now seeks to have this currency and various inculpatory statements made in connection therewith suppressed pursuant to the "fruit of the poisonous tree" doctrine.

It has long been axiomatic that border searches of travelers both entering and leaving the country are constitutional, with minor exceptions. Though the validity of both searches in this case is technically at issue, the resolution of this motion hinges upon the Court's decision with respect to the first search in that the validity of the second search depends upon the first. The defendant contends that the first search was both unconstitutional and in violation of former § 5317(b), because it was conducted absent reasonable suspicion.[2]

*Discussion*

## A. The First Search

We need not linger on defendant's constitutional contention because it is obviously invalid. *See United States v. Udofot*, 711 F.2d 831, 839–40 (8th Cir.1983), *cert. den.* 464 U.S. 896, 104 S.Ct. 245, 78 L.Ed.2d 234; *United States v. Ajlouny*, 629 F.2d 830, 833–34 (2d Cir.1980), *cert. den.* 449 U.S. 1111, 101 S.Ct. 920, 66 L.Ed.2d 840 (1981); *United States v. Turner*, 639 F.Supp. 982, 986 (E.D.N.Y.1986). So too, we disagree with defendant's second contention, that currency seized in violation of former § 5317(b) must be suppressed, because we find that Congress did not intend, when passing that statute, to exclude evidence unreasonably seized (distinguishing seizure from suppression).

In interpreting the statute, the determining principle here is that amendments designed to clarify earlier statutes are entitled to "substantial weight" when interpreting the meaning of an earlier statute. *Barnes v. Cohen*, 749 F.2d 1009, 1015 (3d Cir.1984), *cert. den. Cohen v. Betson*, 471 U.S. 1061, 105 S.Ct. 2126, 85 L.Ed.2d 490 (1985). A statutory amendment is presumed to clarify an earlier statute where, as here, that statute is ambiguous and there is a split between circuits regarding its interpretation. *Id.* *See also Callejas v. McMahon*, 750 F.2d 729 (9th Cir.1984); *Brown v. Marquette Sav. and Loan Assoc.*, 686 F.2d 608 (7th Cir.1982); *May Dept. Stores Co. v. Smith*, 572 F.2d 1275 (8th Cir.1978), *cert. den. May Dept. Stores*

---

1. Former § 5317(b) states:

   A customs officer may stop and search without a search warrant a vehicle, vessel, aircraft, or other conveyance, envelope or other container, or person entering or departing the United States with respect to which or whom the officer has reasonable cause to believe there is a monetary instrument being transported in violation of § 5316 of this title.

2. The term "reasonable cause," as used in § 5317(b), is identical to the reasonable suspicion standard used to gauge constitutional violations. *United States v. Turner*, 639 F.Supp. 982, 985 n. 1 (E.D.N.Y.1986).

*Co. v. Veterans Administration,* 439 U.S. 837, 99 S.Ct. 122, 58 L.Ed.2d 134.

Prior to its 1986 amendment, the intent of Congress with respect to a § 5317(b) remedy had been analyzed by three courts in two circuits. In *United States v. Chemaly,* 741 F.2d 1346 (11th Cir.1984), *reinstated* 764 F.2d 747 (1985) (*en banc*), the Eleventh Circuit analogized 31 U.S.C. § 1105 protection (the statutory predecessor of former § 5317(b)) to that afforded by the Fourth Amendment, and determined that Congress must therefore have intended that evidence seized in violation of it be suppressed.[3] By contrast, the courts in *United States v. Benevento,* 649 F.Supp. 1379, 1382 (S.D.N.Y.1986), and *United States v. Turner, supra,* were unwilling to infer, from congressional silence, that suppression was the intended remedy for § 5317(b) violations, particularly when the "manifest purpose" of that statute was to enhance the ability of federal agents to interdict illegally transported currency.

At first blush, it would appear that a § 5317(b) violation requires suppression. However, the October, 1986 amendment to § 5317(b),[4] by excising the reasonable suspicion limitation on currency searches at the border, means that customs agents may now search travelers for currency violations without any suspicion of illegality at all, so long as the search is minimally intrusive. *See Ajlouny, supra.* This amendment clearly demonstrates that when passing former § 5317(b) in 1984 the intent of Congress was, as stated in *Turner,* "to give federal agents a freer hand," rather than to extend traditional Fourth Amendment protections to international travelers.

Given this fact, there is no longer any reason to imply that suppression was the intended remedy for currency seized illegally under the statute. Consequently, we decline to so imply, and defendant's motion to suppress currency seized from the search of her hand luggage is therefore denied.

### B. *The Second Search*

██ The second, body search of defendant was more intrusive. In that case, regardless of former § 5317(b), a reasonable suspicion limitation is imposed on the search by the Fourth Amendment. *See United States v. Ogberaha,* 771 F.2d 655 (2d Cir.1985), *cert. den. Ogberaha v. United States,* —— U.S. ——, 106 S.Ct. 887, 88 L.Ed.2d 922 (1986); *United States v. Moody,* 649 F.2d 124 (2d Cir.1981). Since the fruits of the first search alone exceeded $10,000, in violation of federal law, the customs inspector was obviously justified in ordering that defendant be subjected to a body search. Accordingly, defendant's motion to suppress the fruits of the second search and inculpatory statements uttered in connection therewith is also denied.

SO ORDERED.

---

3. Another basis for the *Chemaly* decision was an application of the court's inherent supervisory power. In the Second Circuit, however, that power has been interpreted more narrowly than in the Eleventh Circuit, and accordingly does not include the exclusion of evidence obtained in this type of case. *See Daye v. Attorney General of the State of New York,* 712 F.2d 1566, 1570 n. 2 (2d Cir.1983); *United States v. Lau Tung Lam,* 714 F.2d 209, 210 (2d Cir.1983); *United States v. Benevento, supra. See also United States v. Hastings,* 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983); *United States v. Payner,* 447 U.S. 727, 735–36 n. 8, 100 S.Ct. 2439, 2446–47 n. 8, 65 L.Ed.2d 468 (1980); *United States v. Cottina,* 630 F.2d 1207, 1214–17 (7th Cir.1980).

4. This amendment, which appears in section 1355 of Public Law 99–570, entitled "The Anti-Drug Abuse Act of 1986," states:
   (a) CUSTOMS AUTHORITY TO CONDUCT SEARCHES AT THE BORDER—Section 5317(b) of title 31, United States Code, is amended to read as follows:
   (b) SEARCHES AT THE BORDER—For purposes of ensuring compliance with the requirements of section 5316, a customs officer may stop and search, at the border and without a search warrant, any vehicle, vessel, aircraft, or other conveyance, any envelope or other container, and any person entering or departing from the United States.