UNITED STATES of America, Plaintiff,

v.

David R. KAPLAN, et al., Defendants.

Civ. A. No. 92–11109–S.
Bankruptcy No. 91–4278.
Adv. No. 92–4089.

United States District Court,
D. Massachusetts.

Oct. 19, 1992.

George P. Eliopoulos, U.S. Dept. of Justice, Tax Div., Washington, D.C., for plaintiff.

Joseph Hewes Reinhardt, Hendel, Collins & Newton, Springfield, Mass. and Anthony J. Piraino, Jr., John's Island, S.C., for defendants.

MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION TO WITHDRAW REFERENCE TO BANKRUPTCY COURT OR IN THE ALTERNATIVE TO ENJOIN THE BANKRUPTCY COURT

SKINNER, District Judge.

This matter is before this court on the Internal Revenue Service's (IRS) motion, made pursuant to 28 U.S.C. § 157(d), to withdraw the reference to the bankruptcy court of two related adversary actions filed in the bankruptcy court. This motion is denied because it was not timely filed nor was cause shown as required by the statute.

The procedural background is complex because three potential debtors are involved, each with a number of cases pending in the federal courts. David Kaplan, Eric Gervais, and Anthony Piraino, Jr.—the defendants in this case—were shareholders in Club ESD, Inc., a now defunct Vermont cabaret. Kaplan and Gervais each held 30% of the stock of the corporation, Piraino owned 10%, and a fourth shareholder not involved in this litigation held a 30% stake. The defendants had varying degrees of involvement with the finances and operations of the corporation, though there is some dispute as to the precise nature of each defendant's activities. This litigation arises from the corporation's unpaid federal payroll tax liability. Club ESD withheld, but failed to account for and pay over to the IRS, federal income taxes and Federal Insurance Contributions Act taxes during the five quarter period from April 1989 through June 1990.

By letter dated May 10, 1991, the IRS proposed to assess a 100% penalty against Kaplan totalling more than $32,000, pursuant to 26 U.S.C. § 6672, for his alleged willful failure as a responsible person to collect, truthfully account for, and pay over to the IRS federal payroll taxes for the five quarter period. The IRS similarly notified Gervais and Piraino.

On July 31, 1991, Kaplan filed a voluntary petition under Chapter 7 of the bankruptcy code with the bankruptcy court for the District of Massachusetts. He filed a

proof of claim in the sum of $0 on behalf of the IRS for potential § 6672 liability.[1]

On December 27, 1991, Kaplan commenced an adversary proceeding in the bankruptcy court against the IRS seeking a determination that he is not liable under § 6672 as "responsible person."[2] The IRS initially defaulted on the adversary proceeding, then answered the complaint, and subsequently prevailed on its request that the default be removed. On April 2, 1992, the IRS filed a motion with the bankruptcy court to stay the adversary proceeding. The motion was denied. Under the supervision of the bankruptcy court, the parties have exchanged interrogatories, requests for document production, and appeared at a pre-trial conference. Moreover, the bankruptcy court has quashed one of the IRS's defenses. On April 6, 1992, the bankruptcy court ordered that discovery be completed by the end of October 1992 and scheduled trial for November 18, 1992.

On May 11, 1992, the Secretary of the Treasury formally assessed a 100% penalty against Kaplan arising from the unpaid Club ESD payroll taxes.[3] The IRS then filed a separate action in the district court on May 14, 1992, to reduce to judgment the outstanding federal tax assessments against the defendants arising from their Club ESD activities. Simultaneously, the IRS filed a motion to withdraw the reference of the adversary proceeding from the bankruptcy court and to consolidate the proceedings in the district court, or in the alternative, to enjoin the bankruptcy court from moving forward on the bankruptcy proceedings. The IRS filed similar motions with the bankruptcy court for both the Gervais and Kaplan adversary proceedings.[4] The bankruptcy judge referred the motions to this court with the recommendation that they be denied.

The thrust of the IRS's motion is that the district court should exercise its discretion to withdraw the adversary proceeding from the bankruptcy court, pursuant to 28 U.S.C. § 157(d), in order to prevent the duplication of litigation on identical factual and legal issues in both the bankruptcy and district courts. Moreover, the IRS alleges that the district court is the only forum where all three defendants can be joined in a single trial.

## DISCUSSION

■ Although federal district courts have original jurisdiction over cases arising under Title 11 of the Bankruptcy Code, 28 U.S.C.A. 1334(a) (West Supp.1992), bankruptcy cases are automatically referred to the bankruptcy court. A district court may withdraw its reference of a particular case if the matter involves a federal law that should or must be adjudicated by an Article III court. Withdrawal is governed by 28 U.S.C. § 157(d), which provides in pertinent part: "The district court may withdraw, in whole or in part, any case or proceeding ... on *timely* motion of any party, for *cause* shown."[5] 28 U.S.C.A. § 157(d) (West Supp.1992) (emphasis added).

■ The express language and legislative history of § 157(d) make clear that Congress intended to have bankruptcy proceedings adjudicated in the bankruptcy court unless withdrawal was essential to preserve a higher interest. *In re DeLorean Motor Co.*, 49 B.R. 900, 912 (Bankr. E.D.Mich.1985); *accord In re Stavriotis*, 111 B.R. 154, 156 (N.D.Ill.1990); *In re Onyx Motor Car Corp.*, 116 B.R. 89, 91 (S.D.Ohio 1990). Accordingly, courts have

---

1. Gervais filed a similar petition for bankruptcy with the same court on April 28, 1992. Piraino, however, has not filed a petition for bankruptcy.

2. On May 20, 1992, Gervais also filed an adversary proceeding challenging the IRS assessment, and, further, requested that his action be consolidated with Kaplan's adversary proceeding.

3. Similar 100% penalty assessments were formally made against Piraino and Gervais on September 2, 1991, and April 20, 1992, respectively.

4. The motion to withdraw the Kaplan proceeding was filed with the bankruptcy court on May 14, 1992. The motion to withdraw the Gervais proceeding was filed on June 1, 1992, less than two weeks after Gervais commenced an adversary proceeding against the IRS.

5. 28 U.S.C. § 157(d) also contains a provision governing mandatory withdrawal by the district court. The parties have not raised this issue, and I have not considered it.

been cautious in applying § 157(d) so that the exception does not swallow the rule. *See In re Parklane/Atlanta Joint Venture,* 927 F.2d 532, 536 (11th Cir.1991); *In re Pruitt,* 910 F.2d 1160, 1168 (3rd Cir. 1990); *Holland Am. Ins. Co. v. Succession of Roy,* 777 F.2d 992, 998 (5th Cir.1985). Withdrawal, even discretionary withdrawal, is permitted in only a limited number of circumstances.

■ Consistent with the plain language of the statute, this court will apply a two prong test to any motion requesting discretionary withdrawal from a bankruptcy court: (1) the motion must be *timely* filed, and (2) the movant must demonstrate *cause* for the withdrawal. The movant carries the burden to show that both elements of § 157(d) have been met. *See Hatzel & Buehler, Inc. v. Central Hudson Gas & Elec.,* 106 B.R. 367, 370 (D.Del.1989) (it is up to the movant to show cause why the case should be withdrawn).

*A. Timeliness*

■ Timeliness is not defined in § 157(d) and the legislative history provides only general guidance. Senator DeConcini, a sponsor of the bill, stated that the timeliness requirement of § 157(d) was "intended to avoid unnecessary delays and costs" and that the "withdrawal provision should not be allowed to be used by any party for the purpose of delay." 130 Cong.Rec. S17,154 (1984). Indeed, DeConcini directed that a "district court shall decline to withdraw a proceeding where withdrawal would unduly delay administration of the estate." *Id.* It appears, then, that Congress intended to guard against harmful interference with the effective and timely administration of bankruptcy proceedings.

■ Despite the absence of a statutory definition, courts are in general agreement that a motion is timely "if it was made as promptly as possible in light of the developments in the bankruptcy proceeding," or, more simply, if it was made "at the first reasonable opportunity." [6] *See e.g., In re Baldwin–United Corp.,* 57 B.R. 751, 753–54 (S.D.Ohio 1985); *In re Giorgio,* 50 B.R. 327, 328 (D.R.I.1985). Timeliness is determined based on a review of the facts of the specific situation. *Baldwin,* 57 B.R. at 753. The statute demands prompt action so as to protect both the court and the parties from useless costs and disarrangement of the calendar, and to prevent unnecessary delay and the use of stalling tactics. As one court noted, once a case becomes subject to withdrawal, "a party has a plain duty to act diligently—or else, to forever hold his peace." *Giorgio,* 50 B.R. at 329.

■ The IRS argues that its motion was made as promptly as possible because it was filed simultaneously with the district court action and within three days of when the formal penalty assessment issued against Kaplan. An interpretation of timeliness that looks to the actions of the party seeking withdrawal, however, would undermine the anti-delay provisions of the statute. Timeliness is assessed from the time a complaint is filed or from the time the grounds for withdrawing the complaint first become apparent. *Laine v. Gross,* 128 B.R. 588, 589 (D.Me.1991); *Giorgio,* 50 B.R. at 329; *In re IQ Telecommunications, Inc.,* 70 B.R. 742 (N.D.Ill.1987).

In this case, Kaplan filed the adversary proceeding against the IRS on January 2, 1992. From this time forward, the IRS was on notice that if it wished to resolve the alleged payroll tax liability of the defendants in a single trial, it would be necessary to withdraw Kaplan's proceeding from the bankruptcy court. More than six months earlier, the IRS had proposed penalty assessments against Kaplan, Gervais, and Piraino arising from their involvement

---

6. The IRS urges this court to follow *Burger King Corp. v. B–K of Kan., Inc.,* 64 B.R. 728 (D.Kan. 1986), in which the court found a motion to withdraw timely even though it was made 10 months after the complaint was filed and after some discovery had taken place. The *Burger King* court adopted a test that essentially turns on the absence of prejudice, rather than the timeliness of the movant's motion. I prefer to rely on the text of the § 157(d), the legislative history, and the weight of judicial authority that demands action at the first reasonable opportunity.

.. 

504

with Club ESD. But instead of timely filing the motion, the IRS defaulted; it then answered the complaint, filed a motion to stay the proceeding, engaged in discovery, and agreed to a trial date before eventually requesting withdrawal, nearly five months later.

■ Moreover, the timeliness of a motion to withdraw must be measured by the stage of the proceedings in the bankruptcy court. 130 Cong.Rec. S17,154 (comments of Senator DeConcini); *In re Securities Group 1980*, 89 B.R. 196, 197 (M.D.Fla. 1988). As a bankruptcy proceeding becomes more developed, complicated, and involved, a court is more likely to find a motion untimely. Here, the bankruptcy proceeding is entering its final stretch: discovery is to be completed within two weeks and trial is scheduled for November. In addition, the bankruptcy court has already issued an opinion denying the IRS's motion to stay the proceeding. In a similar situation, one court has suggested that a motion would be untimely once a bankruptcy court has "gone to the trouble of considering and rendering an opinion on the issue of abstention." *In re Gibson & Cushman Dredging Corp.*, 100 B.R. 634, 639 (E.D.N.Y. 1989). Granting withdrawal at this late stage in the adversary proceeding would unduly delay resolution of Kaplan's and Gervais's liability and disrupt the calendar of the bankruptcy court.

The IRS may complain that strict enforcement of the timeliness requirement in this case will result in injustice. However, the effective and timely resolution of bankruptcy proceedings requires great deference to considerations of punctuality. *Giorgio*, at 328; Cf. *In re Harbour House Operating Corp.*, 724 F.2d 1 (1st Cir.1983). "Expense, inconvenience, and what a litigant may believe to be injustice, are unavoidable consequences of failure to abide by a statute or rule, e.g., a statute of limitations." *Harbour House*, 724 F.2d at 3 (quoting *Century Laminating v. Montgomery*, 595 F.2d 563, 568 (10th Cir.1979)).

■ I find the motion untimely because the grounds the IRS now offers in support of withdrawal were at all times evident

from the face of the Kaplan complaint filed in January 1992. However, I find the motion to withdraw the Gervais action timely because the IRS filed the motion less than two weeks after the commencement of the adversary proceeding.

## B. Cause

■ Finding that the motion was not timely with regard to Kaplan, I need decide the cause requirement only as it bears on the Gervais proceeding. Nevertheless, I discuss both proceedings because of their factual similarity and analytic dependence.

Once a matter has been referred to a bankruptcy court, a district court may withdraw jurisdiction only for "cause shown." 28 U.S.C. § 157(d). Our court of appeals has not yet addressed the cause requirement of § 157(d), but other "courts have made it plain that this is not an empty requirement." *Parklane/Atlanta*, 927 F.2d at 536. In determining whether adequate cause exists to withdraw a matter, most courts that have faced the issue have considered the factors first articulated in *Holland America:*

> The district court should consider the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering the economical use of the debtor' and creditors' resources, and expediting the bankruptcy process.

*Holland America*, 777 F.2d at 999.

If the one or more of these factors is present, the court may find that cause exists to withdraw the matter. However, in light of the presumption that bankruptcy matters should remain in the bankruptcy court, the legislative history of § 157(d), and judicial interpretation, I require a clear showing of cause before withdrawing a case from the able judges of the bankruptcy court. *Onyx*, 116 B.R. at 91 ("Let it be clear, without truly exceptional and compelling circumstances, a motion for withdrawal of reference will not be well received by this Court."); *DeLorean*, 49 B.R. at 912 (an "overriding interest" must be shown to overcome the presumption that Congress

intended to have bankruptcy proceedings adjudicated in bankruptcy court).

 The IRS rests its motion for discretionary withdrawal on three grounds. The first argument, based on judicial economy, is fatally undermined by the IRS's delay in moving to withdraw the Kaplan proceeding. A district court may withdraw a bankruptcy reference in order to avoid the inconvenience and expense of duplicate proceedings, and the corresponding risk of inconsistent results. *Ameritel Corp. v. Isoetec Communications, Inc.,* 109 B.R. 965 (D.Or.1990); *In re Wedtech Corp.,* 81 B.R. 237 (S.D.N.Y.1987); *In re Eichelberger,* No. 89–2008, 1990 U.S.Dist. LEXIS 4217 (N.D.Iowa Mar. 27, 1990). The IRS asserts, and this court tends to agree that the bankruptcy court can exercise jurisdiction over only two of the three potential "responsible parties" liable under § 6672.[7] Absent withdrawal, the IRS may be forced to litigate the liability of Gervais and Kaplan in the bankruptcy court, and the liability of Piraino in the district court. Had this motion been brought in a timely manner, judicial economy would have weighed in favor of withdrawal. However, in failing to act diligently, the IRS sacrificed the opportunity to try the three defendants in a single forum. Even if this court now granted the motion to withdraw the Gervais proceeding, the Kaplan proceeding would remain in the bankruptcy court, necessitating two trials. Granting withdrawal, at this point, would accomplish nothing.

Secondly, the IRS argues withdrawal is compelled by uncertainty and confusion attributable to "the precarious jurisdictional posture of [Kaplan's and Gervais's] § 6672 bankruptcy proceeding." I disagree. A bankruptcy court may properly exercise jurisdiction under 28 U.S.C. § 1334(b) where the matter is at least "related to" the bankruptcy. *Wolverine,* 930 F.2d at 1141. Courts have uniformly adopted an expansive definition of a "related" proceeding. *Id.* "The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.*" *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3rd Cir.1984) (emphasis in original; citations omitted) (interpreting "related to" jurisdiction under 28 U.S.C. § 1471(b), the substantially identical statutory predecessor to 28 U.S.C. § 1334(b)). The IRS has presented no facts that bring the jurisdiction of the bankruptcy court into question. Moreover, if the IRS wishes to challenge the jurisdiction it should confront the issue in clear and unequivocal terms. The mere possibility that jurisdiction could be challenged does not factor into my decision on the motion for withdrawal.

Finally, the IRS argues that withdrawal will expedite Kaplan's and Gervais's bankruptcy proceedings because the defendants "will avoid the needless delay and costs associated with the repetitious litigation of claims." This argument falsely assumes, however, that Kaplan and Gervais will necessarily be forced to relitigate in the district court factual issues previously decided in the bankruptcy court. In the event that I am required to review the findings of the bankruptcy court, my review will be limited in scope to discreet issues, not complete duplication of the bankruptcy proceeding. Rather than expediting the bankruptcy proceedings, which are currently scheduled for trial in November 1992, withdrawal would likely delay resolution for a year or more while the case made its way through the district court. Throughout this period of delay, the question of liability would loom over the lives of the defendants and, most certainly, legal fees would accumulate. Contrary to the IRS's argument, the goal

---

7. The IRS asserts that since Piraino has not filed for bankruptcy, the bankruptcy court does not have jurisdiction to decide Piraino's § 6672 tax liability, absent his consent. I am inclined to agree. Though the First Circuit has not decided in what situations, if any, a bankruptcy court may exercise jurisdiction over non-consenting non-debtor third-parties, the emerging trend is to disallow jurisdiction in these situations. *In re Wolverine Radio Co.,* 930 F.2d 1132, 1139 (6th Cir.1991), *reh'g denied; see also American Principals Leasing Corp. v. U.S.,* 904 F.2d 477 (9th Cir.1990); *Quattrone Accountants, Inc. v. IRS,* 895 F.2d 921 (3rd Cir.1990).

of expediting the bankruptcy proceedings clearly weighs against withdrawal.

In sum, therefore, withdrawal would not eliminate the need for two trials, but would substantially delay the resolution of Kaplan's and Gervais's liability and probably increase their costs of defending this suit. Considering the facts of this dispute and the procedural posture of the relevant matters, I am not persuaded that the IRS has demonstrated adequate cause to overcome the presumption that the matter should remain in the bankruptcy court.

I decline to exercise my discretion to withdraw the matters from the bankruptcy court. The motion to withdraw reference from the bankruptcy court is denied. Kaplan's and Gervais's adversary proceedings will be consolidated and tried in the bankruptcy court. The district court proceeding against Kaplan, Gervais, and Piraino will be stayed until the bankruptcy court has announced judgment in the consolidated action.