In re DOOLEY PLASTIC
CO., INC., Debtor.

Stephen S. GRAY, Chapter 7 Trustee
in Bankruptcy, Plaintiff,

v.

SOLVAY POLYMERS, INC., Defendant.

Civ. A. No. 94–11533–RCL.

United States District Court,
D. Massachusetts.

Dec. 21, 1994.

Jerry B. Plumb, Riemer & Braunstein, Boston, MA, for Solvay Polymers, Inc.

James F. Coffey, Coffey & Shea, Boston, MA, for Stephen S. Gray.

*OPINION*

LINDSAY, District Judge.

■ This case is before the Court on a motion by Solvay Polymers, Inc. ("Solvay") to withdraw the reference to a bankruptcy judge of an adversary proceeding. The case squarely raises the question of whether

bankruptcy judges have statutory authority to conduct jury trials. The First Circuit has not yet been faced with the issue. Nevertheless, after careful consideration, this Court concludes that insofar as this case is concerned, Congress has not authorized the bankruptcy judge to conduct a jury trials.[1] Accordingly, this Court will withdraw the reference to the Bankruptcy Court with respect to the adversary proceeding at issue in this case.

## I. Procedural History.

This case arises out of a Chapter 7 proceeding involving the debtor, Dooley Plastics Co., Inc. ("the debtor"). The debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code on July 1, 1993.

On April 5, 1994, the debtor's Trustee, Stephen Gray ("the Trustee"), filed an adversary action against Solvay. The adversary proceeding seeks to set aside certain alleged preferential transfers made by the debtor prior to the Chapter 7 petition. The parties agree that the action constitutes a "core proceeding" pursuant to 28 U.S.C. § 157.

Solvay demanded a jury trial in its answer, filed on May 16, 1994. On July 5, 1994, Solvay moved for a withdrawal of the reference to the Bankruptcy Court as to all claims involving the adversary proceeding. This Court heard argument on the motion on August 15, 1994.

## II. Authority of Bankruptcy Court to Hold Jury Trial.

### A. Background: Marathon, "BAFJA" and Granfinanciera.

To frame discussion of the case at hand, one must start with the Supreme Court's decision in *Northern Pipeline Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

In *Marathon*, the Supreme Court ruled that Congress had overstepped Article III in its enactment of the Bankruptcy Act of 1978. The 1978 Act had made significant changes in the substantive and procedural law of bankruptcy. It vested the judges of the bankruptcy courts with all of the "powers of a court of equity, law and admiralty." *Marathon*, 458 U.S. at 55, 102 S.Ct. at 2863 (opinion of Brennan, J.), *quoting* 28 U.S.C. § 1481 (1976 ed., Supp. IV). In addition to this "broad grant of power," the Act granted bankruptcy judges the power to hold jury trials; to issue declaratory judgments; to issue writs of habeas corpus under certain circumstances; to issue all writs necessary in aid of the bankruptcy court's expanded jurisdiction; and to issue any order, process or judgment necessary or appropriate to carry out the provisions of Title 11. *Marathon*, 458 U.S. at 55, 102 S.Ct. at 2863 (opinion of Brennan, J.).

The plurality opinion, authored by Justice Brennan, discussed the important distinctions between Article III judgeships and the bankruptcy judgeships established by the 1978 statute. It noted that Article III judges hold their office during "good behavior" and that their compensation may not be diminished during their time in office. On the other hand, bankruptcy judges have time restrictions on their term in office, do not have protection from diminution of salary and may be removed for reasons other than a lack of "good behavior." *Id.* at 57–63, 102 S.Ct. at 2864–67.

The plurality noted that "Congress possesses broad discretion to assign factfinding functions to an adjunct created to aid in the adjudication of congressionally created statutory rights," but that according non-Article III tribunals with "functions that have been traditionally performed" by Article III courts leads to "unwarranted encroachments upon

---

**1.** On October 22, 1994, President Clinton signed into law the Bankruptcy Reform Act of 1994. PL–103–394, 108 Stat. 4106. The Act includes an amendment to the Bankruptcy Code regarding jury trials. PL 103–394, § 112. As discussed in Section II.E. of this opinion, the amendment, which allows bankruptcy judges to conduct jury trials in certain circumstances, does not apply to this case, because the case was filed prior to the enactment of the amendment. *See* PL 103–394, § 702 ("[T]he amendments made by this Act shall not apply with respect to cases commenced under title 11 of the United States Code before the date of the enactment of this Act"). This case is decided, therefore, under the law as it existed prior to the enactment of the October, 1994 amendments to the Bankruptcy Code.

the judicial power of the United States." *Marathon,* 458 U.S. at 81, 84, 102 S.Ct. at 2877, 2878. The plurality went on to state that the Bankruptcy Act of 1978 "carries the possibility of such an unwarranted encroachment." *Id.* at 84, 102 S.Ct. at 2878.

Many of the rights subject to adjudication by the Acts' bankruptcy courts ... are not of Congress' creation. Indeed, the cases before us, which center upon appellant Northern's claim for damages for breach of contract and misrepresentation, involve a right created by *state* law, a right independent of and antecedent to the reorganization petition that conferred jurisdiction upon the Bankruptcy Court. [Footnote omitted] Accordingly, *Congress' authority to control the manner in which that right is adjudicated, through assignment of historically judicial functions to a non-Art. III 'adjunct,' plainly must be deemed at a minimum.* Yet it is equally plain that Congress has vested the 'adjunct' bankruptcy judges with powers over Northern's state-created right that far exceed the powers that it has vested in administrative agencies that adjudicate only rights of Congress' own creation.

*Id.* (emphasis added).

The plurality concluded that the jurisdictional grant of the Bankruptcy Act of 1978, 28 U.S.C. § 1471,[2] "impermissibly removed most, if not all, of the 'essential attributes of the judicial power' from the Art. III district court, and has vested those attributes in a non-Art. III adjunct." *Marathon,* 458 U.S. at 87, 102 S.Ct. at 2880.[3]

Congress responded to the *Marathon* decision by enacting the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("BAFJA" or "the 1984 Amendments"). The 1984 Amendments retailored the jurisdictional structure of the bankruptcy courts, repealing sections 1471 and 1481.[4]

■ The 1984 Amendments established a bifurcated method of adjudicating claims in bankruptcy court. If a claim is a "core" proceeding, the bankruptcy judge may "hear and determine" the claim and "enter appropriate orders and judgments," subject to review by the district court.[5] If a claim is

**2.** Section 1471 provided, in part, that:

[t]he bankruptcy court for the district in which a case under title 11 is commenced shall exercise all of the jurisdiction conferred by this section on the district courts.

**3.** Justice Rehnquist concurred in the judgment. He focused on the fact that the bankruptcy court in the case before it had been empowered to hear the matter without the consent of one of the parties. "None of the cases has gone so far as to sanction the type of adjudication to which Marathon will be subjected against its will under the provisions of the 1978 Act." *Marathon,* 458 U.S. at 91, 102 S.Ct. at 2882. (Rehnquist, J., concurring in the judgment). The Supreme Court later restated *Marathon's* holding more narrowly than did the plurality in *Marathon.* "Congress may not vest in a non-Article III court the power to adjudicate, render final judgment, and issue binding orders in a traditional contract action arising under state law, without consent of litigants, and subject only to ordinary appellate review." *Thomas v. Union Carbide Agricultural Products Co.,* 473 U.S. 568, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985). It is noteworthy that Congress, in its 1994 amendment to 28 U.S.C. § 157, required the consent of the parties as a prerequisite to jury trials in bankruptcy courts.

**4.** The 1984 Amendment's version of section 151—which is still in effect today—provides:

In each judicial district, the bankruptcy judges in regular active service shall constitute a unit of the district court to be known as the bankruptcy court for that district. Each bankruptcy judge, as a judicial officer of the district court, may exercise the authority conferred under this chapter with respect to any action, suit, or proceeding and may preside alone and hold a regular or special session of the court, except as provided by law or by rule or order of the district court.

28 U.S.C. § 151.

**5.** Section 157 provides that in "core" proceedings the bankruptcy judges would have the power to:

hear and determine cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

28 U.S.C. § 157(b)(1). Section 157 provides a non-exclusive list of core proceedings, including "matters concerning the administration of the estate;" "proceedings to determine, avoid, or recover preferences;" "proceedings to determine, avoid, or recover fraudulent conveyances;" among twelve other items specifically listed. Section 157 provides that the bankruptcy judge shall determine whether a proceeding is core or non-core.

"noncore," the bankruptcy judge may only "hear" the case, and submit the proposed findings of fact and conclusions of law to the district court, which retains the authority to enter a final judgment.[6] *See In re United Missouri Bank of Kansas City, N.A.,* 901 F.2d 1449, 1453 (8th Cir.1990).

The statute also now provides that the "district court shall order that personal injury tort and wrongful death claims shall be tried" in district court, not in bankruptcy court. 28 U.S.C. § 157(b)(5). In addition, 28 U.S.C. § 1411, provides that "this chapter and title 11 do not affect any right to trial by jury that an individual has under applicable nonbankruptcy law with regard to a personal injury or wrongful death tort claim."

In *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), the Supreme Court ruled that, under the Seventh Amendment, "a person who has not submitted a claim against a bankruptcy estate has a right to a jury trial when sued by the trustee in bankruptcy to recover an allegedly fraudulent monetary transfer." *Id.* at 36, 109 S.Ct. at 2787. The Court rejected the view of a number of lower courts that bankruptcy proceedings falling within the bankruptcy court's core jurisdiction are inherently equitable in nature and thus not covered by the Seventh Amendment's guarantee. "Congress cannot eliminate a party's Seventh Amendment right to a jury trial merely by relabeling the cause of action to which it attaches and placing exclusive jurisdiction in an administrative agency or a specialized court of equity." *Id.* at 61, 109 S.Ct. at 2800. The Supreme Court expressly declined to decide "whether bankruptcy courts may conduct jury trials in fraudulent convey-

ance suits brought by a trustee against a person who has not entered a claim against the estate." *Id.* at 50, 109 S.Ct. at 2794.

Thus, prior to the amendments to the Bankruptcy Code enacted in October, 1994, the Supreme Court left it to the lower courts to figure out whether bankruptcy judges had congressional permission to conduct jury trials.

B. *Jury Trials in Bankruptcy Courts: The Split Among the Circuits.*

1. *The Second Circuit's Position.*

The first circuit to address the question was the Second Circuit. *In re Ben Cooper, Inc.,* 896 F.2d 1394 (2nd Cir.1990), *cert. granted,* 497 U.S. 1023, 110 S.Ct. 3269, 111 L.Ed.2d 779 *vacated and remanded,* 498 U.S. 964, 111 S.Ct. 425, 112 L.Ed.2d 408 (1990), *reinstated,* 924 F.2d 36 (2nd Cir.1991), *cert. denied,* 500 U.S. 928, 111 S.Ct. 2041, 114 L.Ed.2d 126 (1991). The Second Circuit held that "the bankruptcy courts may conduct jury trials in core proceedings." *In re Ben Cooper,* 896 F.2d at 1402.

The court's reasoning was as follows:

Our holding rests on two separate but related provisions. The first provision is 28 U.S.C. § 151 (1988), which states that "[e]ach bankruptcy judge, as a judicial officer of the district court, may exercise the authority conferred under this chapter with respect to any action, suit or proceeding." The second provision is § 157(b), which, as stated previously, gives bankruptcy judges the authority to conduct trials and issue final orders in core proceedings. *Granfinanciera* teaches that such proceedings, if legal in nature, are subject

---

The 1994 amendment added subsection (e), which provides for jury trials in cases that may be heard by a bankruptcy judge under § 157 if the district court specially designates the bankruptcy judge to conduct the jury trial and all the parties expressly consent to having the bankruptcy judge conduct the jury trial. P.L. 103–394, § 112. This amendment will be discussed in Section II.E. of this opinion. While the amendment is not applicable to this case, it is worth noting that the Trustee here did not consent to a jury trial in the Bankruptcy Court.

6. As to non-core proceedings, section 157 also provides that:

A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of act and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected. 28 U.S.C. § 157(c)(1).

to the Seventh Amendment, but that opinion does not alter Congress' intent that they be heard by a bankruptcy court with authority to issue final orders. Construing the Bankruptcy Code to allow jury trials in the bankruptcy court is the only way to reconcile these various concerns.

*Id.*

The Second Circuit found no constitutional impediment to jury trials in the bankruptcy courts, at least as to core matters. The court noted that the Seventh Amendment provides, in part, that "no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law." According to the Second Circuit, "No reviewing court therefore may 'redetermine facts found by the jury.'" *Id.* at 1403, *quoting Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.,* 369 U.S. 355, 359, 82 S.Ct. 780, 783, 7 L.Ed.2d 798 (1962). As to non-consensual non-core proceedings, which allow for de novo review of findings of fact, a jury trial in the bankruptcy court may well be unconstitutional, the Second Circuit reasoned. But because the jury verdict in a *core* proceeding is "subject only to the traditional standards of appellate review, such proceeding does not violate the Seventh Amendment." *In re Ben Cooper,* 896 F.2d at 1403.

The Second Circuit also concluded that bankruptcy court jury trials as to core matters do not encroach on Article III. If bankruptcy courts "have the power to enter final judgments without violating Article III, it follows that jury verdicts in the bankruptcy courts do not violate Article III." *Id.* at 1403.[7]

### 2. *The Eighth Circuit.*

The Eighth Circuit was the next court to take on the question of whether jury trials may be had in the bankruptcy court. The court first decided that Congress had not granted bankruptcy courts authority to hold jury trials in *non-core* cases.

The statutory process governing non-core proceedings, i.e., the bankruptcy court sub-

mitting proposed findings of fact and conclusions of law to the district court, is in our judgment incompatible with any implication that Congress has provided the bankruptcy court the authority to try jury cases in non-core proceedings.

*United Missouri Bank,* 901 F.2d at 1453.

In deciding whether Congress had granted bankruptcy courts authority to hold jury trials as to *core* proceedings, the Eighth Circuit first determined that Congress had not *expressly* granted such authority. "As the Second Circuit acknowledged, the 1984 Act, and in particular section 157, does not contain any specific or express language granting a bankruptcy judge authority to conduct jury trials." *Id.* at 1454. The Eighth Circuit noted that Congress knows how expressly to grant the authority to conduct jury trials if it wants to do so, because it had expressly provided for jury trials before magistrates. *Id., citing* 28 U.S.C. § 636(a)(3), (c)(1) (1982).

The Eighth Circuit next ruled that Congress had not *implicitly* granted the bankruptcy courts authority to conduct jury trials as to core proceedings. The court rejected the argument that because Congress had designated personal injury and wrongful death actions to be tried in the district court, all other jury trials are to be conducted in the bankruptcy court. The court stated that "[t]here is no discussion in the legislative record that suggests Congress intended to grant bankruptcy judges the authority to conduct jury trials." *United Missouri Bank,* 901 F.2d at 1455. The court noted that the only relevant legislative history reveals a debate over whether to vest bankruptcy judges with Article III status. *Id.*

The Eighth Circuit criticized the reasoning of the Second Circuit in the *Ben Cooper* case as follows:

The Second Circuit's conclusion is premised upon the reasoning that since Congress could not deprive a private litigant of his Seventh Amendment right by designating an Article I forum to hear subject matter pertaining to private rights, Congress intended that the Article I forum have the authority to conduct jury trials.

---

7. The Second Circuit later held that "the constitution prohibits bankruptcy courts from holding jury trials in non-core matters." *In re Orion Pictures,* 4 F.3d 1095, 1101 (2nd Cir.1993).

We find this to be a faulty syllogism. We think it more plausible that Congress simply intended to transfer all proceedings relating to the bankruptcy estate to the sole jurisdiction of the bankruptcy court [footnote omitted] without regard to whether a party was entitled to a jury trial, or which forum would conduct the trial. In fact, it appears Congress did not even consider the need to provide jury trial authority. As the Supreme Court pointed out: 'Thus, the 1984 Amendments' denial of the right to a jury trial in preference and fraudulent conveyance actions can hardly be said to represent Congress' considered judgment of the constitutionality of this change.' *Granfinanciera*, 492 U.S. at 61–62 n. 16, 109 S.Ct. at 2800 n. 16. If Congress did not consider the constitutionality of denying jury trials, we doubt if it considered the need to provide for authority for the bankruptcy court to conduct a jury trial.

*Id.* at 1456.

The Eighth Circuit stated that "[i]t is not enough that the implied power is consistent with the legislation from which it is implied. 'The power to be implied ... must be practically indispensable and essential in order to execute the power actually conferred.' " *Id.,* quoting 2A *Sutherland Stat. Const.* § 55.03. The court concluded that the power to conduct jury trials is not indispensable to a bankruptcy judge.

The Eighth Circuit noted that

Congress, at the time of the 1984 Act, was extremely wary of its authority to clothe Article I courts with Article III powers.... We hesitate to reach too far to imply the authority for an Article I court to try jury cases involving private rights simply because Congress seeks to introduce a more efficient bankruptcy scheme, ... especially where congressional and historical support for that authority is lacking. We are likewise guided by the principle that we should 'avoid an interpretation of a federal statute that engenders constitutional issues if a reasonable alternative

poses no constitutional problems.' *Gomez v. United States*, 490 U.S. 858, 864, 109 S.Ct. 2237, 2241, 104 L.Ed.2d 923 (1989).

*Id.* at 1456. (Citations omitted.)

### 3. *The Other Circuits.*

Every other circuit addressing the question of jury trials in bankruptcy courts has followed the Eighth Circuit and has rejected the reasoning of the Second Circuit. *See In re Kaiser Steel Corp.*, 911 F.2d 380 (10th Cir.1990); *In re Baker & Getty Financial Services, Inc.*, 954 F.2d 1169 (6th Cir.1992); *Matter of Grabill Corp.*, 967 F.2d 1152 (7th Cir.1992); *In re Stansbury Poplar Place, Inc.*, 13 F.3d 122 (4th Cir.1993); *In re Clay*, 35 F.3d 190 (5th Cir.1994).[8] As noted earlier, the First Circuit has not decided the issue.

Following are some of the reasons given in support of the conclusion that bankruptcy judges do not have the statutory authority to conduct jury trials, which are in addition to those points made by the Eighth Circuit.

1. A literal reading of 28 U.S.C. § 157(b)(1), which provides that "bankruptcy judges may hear and determine all cases," is that Congress granted these judges the personal power to hear these cases, and did not implicitly authorize them to delegate this power to a jury. *In re Kaiser Steel Corp.*, 911 F.2d 380, 391 (10th Cir.1990).

2. No present Bankruptcy Rule provides for jury trials. Formerly, the Bankruptcy Rules did provide a procedure for jury trials, but the rule was repealed after the *Marathon* decision. *In re Baker & Getty Financial Services, Inc.*, 954 F.2d 1169, 1173 (6th Cir.1992); *Matter of Grabill Corp.*, 967 F.2d 1152, 1155 (7th Cir.1992).

3. Congress intended the bankruptcy court to be a specialized court to handle bankruptcy matters in an expedited and efficient manner. Congress did not set up this system intending these courts to handle

---

**8.** Two circuits have ruled that bankruptcy courts may not conduct jury trials as to noncore matters, but have not decided the question regarding

core matters. *In re Cinematronics, Inc.*, 916 F.2d 1444, 1451 (9th Cir.1990); *Beard v. Braunstein*, 914 F.2d 434 (3rd Cir.1990).

lengthy jury trials. *Baker & Getty*, 954 F.2d at 1173; *Grabill*, 967 F.2d at 1158.[9]

4. "Jurisdictional statutes are to be construed 'with precision and with fidelity to the terms by which Congress has expressed its wishes.'" *Matter of Grabill Corp.*, 967 F.2d 1152, 1154 (7th Cir.1992), *quoting Palmore v. United States*, 411 U.S. 389, 396, 93 S.Ct. 1670, 1675, 36 L.Ed.2d 342 (1973).

5. "Congress legislated with care in amending the Bankruptcy Act, and ... had it intended to provide for jury trials in bankruptcy court, it would 'not [have] left the matter to mere implication.'" *Grabill*, 967 F.2d at 1155. (Citation omitted.)

### C. The Split Among the Judges in the Massachusetts District.

Two judges in the District of Massachusetts have reached opposite results on the question of jury trials in bankruptcy courts. In *Weiss v. Avenir Acquisition Corp.*, 139 B.R. 761 (D.Mass.1991), then Chief Judge (now Senior District Judge) Freedman referred to what was, at the time, the "majority view," namely, that a bankruptcy court may conduct jury trials in core proceedings. At the time of the *Weiss* case, several of the Circuits had not yet weighed in on the question, and the "majority" constituted the Second Circuit, together with a number of district courts and bankruptcy courts.

In *In re Chestnut Hill Mortgage Corp.*, 156 B.R. 111 (Bkrtcy.D.Mass.1993), Bankruptcy Judge Kenner decided that bankruptcy judges do not have authority to conduct jury trials. The judge followed "four of the five courts of appeal which have addressed this issue." *Id.* at 111. The judge summarized the reasoning of these decisions and concluded:

> In the relatively few bankruptcy proceedings that require a jury, the need to provide a jury trial can be satisfied by trying the proceeding in the district court, which

clearly has jurisdiction over such proceedings (the bankruptcy court's jurisdiction is derived entirely from the district court's bankruptcy jurisdiction under 28 U.S.C. § 1334) and the authority (not to mention the expertise and the logistical wherewithal) to conduct jury trials.

*Id.* at 112.

### D. Discussion.

■ The Court concludes that, insofar as concerns the present case, Congress has not granted the bankruptcy courts authority to conduct jury trials. The Court is persuaded, not merely by the number of Circuit courts which have reached this conclusion, but by the reasoning which has led them to this result.

■ Most significant, in the Court's view, is that Congress, before October, 1994, never expressly provided that bankruptcy judges had the authority to conduct jury trials. In enacting the 1984 Amendments, Congress was faced with the task of reconstructing a bankruptcy system in the wake of the *Marathon* decision, in which the plurality had specifically listed jury trials as one of the problematic features of the 1978 Bankruptcy Act. It would be unreasonable to infer that Congress, without saying so, intended jury trials to remain in bankruptcy courts despite the *Marathon* plurality's grave misgivings. As so many Circuits have noted, Congress knew how to place jury trials in the hands of non-Article III judges when it wished to do so; it had, after all, given this authority to magistrates. *See* 28 U.S.C. § 636(a)(3), (c)(1) (1982). In light of the principle that jurisdictional statutes are not to be broadly construed, *Matter of Grabill Corp.*, 967 F.2d 1152, 1155 (7th Cir.1992), *quoting Palmore v. United States*, 411 U.S. 389, 396, 93 S.Ct. 1670, 1675–76, 36 L.Ed.2d 342 (1973), the Court thinks it best to leave it to Congress to make itself clear. (As discussed below, Con-

---

9. Judge Posner submitted a dissenting opinion in the *Grabill* case which conceded that the 1984 Act is ambiguous and proceeded to endorse jury trials in bankruptcy courts on the basis of practical considerations alone. He stated that "we have here an unbridgeable, unpluggable statutory gap ... We ought in these circumstances to base our decision on practical considerations, and they all line up on the side of allowing bankruptcy judges to conduct jury trials. The main advantage is that it avoids shifting a case, or rather part of a case, from one tribunal and one judge—the bankruptcy court and bankruptcy judge—to another—the district court and the district judge." *Grabill*, 967 F.2d at 1159 (Posner, J., dissenting).

**80**

gress has now spoken more clearly on the subject.) Additionally, the Court adheres to the admonition that statutes should be construed such that constitutional problems may be avoided if there is a reasonable alternative construction. *See Gomez v. United States,* 490 U.S. 858, 863–64, 109 S.Ct. 2237, 2241, 104 L.Ed.2d 923 (1989).

■ Judge Posner, in his dissenting opinion in the *Grabill* case, concluded that since there was no way to figure out what Congress actually intended, we, the judges, should choose the most efficient solution and allow bankruptcy judges to conduct jury trials. *See Grabill,* 967 F.2d at 1159 (Posner, J., dissenting). In this Court's view, Judge Posner correctly recognized that Congress had not addressed the question, but responded with the wrong answer. When judges cannot figure out what Congress intended, it is not for them to insert their own homemade solution. It is for Congress to make its intentions clear.[10]

In fact, while this Court was in the process of drafting its opinion in this case, Congress did make its intentions clearer. As noted in footnotes 1 and 5 above, on October 22, 1994, President Clinton signed into law a statute amending certain sections of the Bankruptcy Code. Included was an amendment to 28 U.S.C. § 157, providing as follows:

> (e) If the right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties.

PL 103–394, § 112. This amendment, effective immediately, is not applicable to bankruptcy cases pending at the time of its enactment, including this case. PL 103–394, § 702. Its enactment, however, is instructive.

> [A]mendments designed to clarify earlier statutes are entitled to "substantial weight" when interpreting the meaning of

an earlier statute. *Barnes v. Cohen,* 749 F.2d 1009, 1015 (3rd Cir.1984), *cert. den. Cohen v. Betson,* 471 U.S. 1061, 105 S.Ct. 2126, 85 L.Ed.2d 490 (1985). A statutory amendment is presumed to clarify an earlier statute where, as here, that statute is ambiguous and there is a split between the circuits regarding its interpretation.

*U.S. v. Demurgas,* 656 F.Supp. 1537, 1538 (E.D.N.Y.1987). In this case, Congress was faced with a split between the Second Circuit and all of the other circuits which had addressed the question of whether the bankruptcy courts had been vested with authority to conduct jury trials. Congress responded by enacting a provision granting the bankruptcy court authority to conduct jury trials when two conditions are met: the district court specially designates the bankruptcy judge to conduct a jury trial and the parties consent. Giving substantial weight to this statutory amendment, the Court infers that Congress had not granted any jury-trial authority at all to the bankruptcy courts prior to the amendment. It would not be reasonable to infer that Congress was cutting back on authority previously granted, for, as previously discussed, there is no indication that Congress had previously granted such authority. In short, Congress' recent amendment supports the Court's conclusion that it had not previously granted the bankruptcy courts with authority to conduct jury trials.

### III. *Procedural Considerations.*

The defendant in the adversary proceeding, Solvay, has moved that this court withdraw the reference to the bankruptcy court as to the adversary proceeding.

28 U.S.C. § 157(d) governs withdrawal of the reference to the bankruptcy court: "The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown."

"Withdrawal from the Bankruptcy Courts is an exception to the general rule that bank-

---

**10.** This Court does not intend here to denigrate the conclusion of Judge Freedman in the *Weiss* case. At the time of his decision, his view *was* in the majority. There is now a clear trend toward holding that bankruptcy judges did not have au-

thority to conduct jury trials prior to the October 1994 amendments to the Bankruptcy Code. After careful review of all of the various considerations surrounding this issue, the Court respectfully differs from Judge Freedman.

ruptcy proceedings should be adjudicated in the bankruptcy court 'unless withdrawal [is] essential to preserve a higher interest.'" *In re Clark–Franklin–Kingston Press, Inc.,* 1993 WL 160580, *4 (D.Mass.1993), *quoting United States v. Kaplan,* 146 B.R. 500, 502–3 (D.Mass.1992). In determining cause, "The district court should consider the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering economical use of the debtors' and creditors' resources, and expediting the bankruptcy process." *Kaplan,* 146 B.R. at 504, *quoting Holland American Ins. Co. v. Succession of Roy,* 777 F.2d 992, 999 (5th Cir.1985).

██ There is no dispute between the parties that the adversary proceeding is a "core" proceeding.[11] There is also no dispute that there is a right to a jury trial in the adversary proceeding. The conclusion that the Bankruptcy Court is not authorized to conduct a jury trial in this case constitutes good cause for withdrawing the reference to the bankruptcy judge. Accordingly, the motion to withdraw the reference to the bankruptcy court as to the adversary proceeding, Gray v. Solvay Polymers, is GRANTED.

---

**11.** This Court agrees that the dispute as to preferential transfers constitutes a core matter. The question of the scope of core jurisdiction thus is not before this Court. *See In re Arnold Print Works, Inc.,* 815 F.2d 165 (1st Cir.1987).